# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1799-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>        Plaintiff-Appellant,<br>    v.<br>Anthony R. Pico,<br>        Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 376 Wis. 2d 524, 900 N.W.2d 343
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 15, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 19, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Michael O. Bohren |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | R.G. BRADLEY, J., concurs, joined by KELLY, J. (opinion filed). |
| DISSENTED: | ABRAHAMSON, J., dissents, joined by A.W. BRADLEY, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Tracey A. Wood*, *Sarah M. Schmeiser*, and *Tracey Wood & Associates*, Madison. There was an oral argument by *Anthony Cotton.*

For the plaintiff-appellant, there was a brief filed by *Sarah L. Burgundy*, assistant attorney general, and *Brad D. Schimel*, attorney general. There was an oral argument by *Sarah L. Burgundy.*

An amicus curiae brief was filed on behalf of Wisconsin Association of Criminal Defense Lawyers by *Robert R. Henak* and *Henak Law Office*, *S.C.*, Milwaukee.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1799-CR
(L.C. No. 2012CF547)

STATE OF WISCONSIN      :      IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Appellant,

    v.

Anthony R. Pico,

    Defendant-Respondent-Petitioner.

**FILED**

**JUN 15, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 DANIEL KELLY, J. A jury convicted Anthony R. Pico of sexually assaulting a young girl.[1] Mr. Pico believes there is a reasonable probability that, absent his trial counsel's alleged constitutional ineffectiveness, this conviction would not have occurred. The circuit court agreed, and so set aside his

---

[1] The Honorable William J. Domina, Waukesha County Circuit Court, presiding.

conviction.[2]   The court of appeals did not agree, and so reinstated the conviction.[3]

¶2   Mr. Pico asked us to review his case because he believes the court of appeals did not properly defer to the circuit court's findings of fact when conducting the ineffective assistance of counsel analysis required by Strickland v. Washington, 466 U.S. 668 (1984).   The State, on the other hand, believes the court of appeals decided the matter correctly and that it was the circuit court that erred when it allowed an expert to testify about the reasonableness of defense counsel's representation.   Finally, Mr. Pico argues that if we agree with the State, then we should send the case back to the circuit court because his sentence was improperly enhanced based on his continued assertion of innocence during the sentencing phase of this matter.

¶3   These arguments call on us to review the following three issues.   First, whether the court of appeals improperly substituted the circuit court's findings of fact with its own when it assessed the sufficiency of trial counsel's performance.   Second, whether an expert witness may testify about the reasonableness of trial counsel's performance.   And third,

---

[2] The Honorable Michael O. Bohren, Waukesha County Circuit Court, presided over the Machner hearing.   See State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] This is a review of an unpublished decision of the court of appeals, State v. Pico, No. 2015AP1799-CR, unpublished slip op. (Wis. Ct. App. May 10, 2017).

2

whether the circuit court improperly relied on Mr. Pico's lack of remorse when it fashioned his sentence. With respect to the first issue, we conclude that the court of appeals conducted the Strickland analysis properly and that Mr. Pico's trial counsel performed as required by the constitution. As to the second, we hold that expert testimony at a Machner[4] hearing regarding the reasonableness of trial counsel's performance is not admissible. And finally, we hold that the circuit court did not err when it imposed sentence on Mr. Pico.

## I. BACKGROUND

¶4 D.T., a primary-school student, said Mr. Pico put his hand inside her pants and touched her vagina twice while he was volunteering in her classroom. She reported the incident to her mother that evening (a Friday), who in turn informed D.T.'s school the following Monday. Upon learning of the incident, D.T.'s school contacted the police.

¶5 Detective Andrew Rich met Mr. Pico in his home to investigate the event. During at least part of the interview, Detective Rich used what is known as the "Reid technique." This technique involves telling the interviewee that law enforcement officials have certain incriminating evidence (which they do not, in fact, have), in the hope that the interviewee will disclose factually accurate details about the event in question. For example, while discussing the event with Mr. Pico (and

---

[4] Machner, 92 Wis. 2d 797.

without identifying D.T. as the victim), Detective Rich told Mr. Pico that there were video cameras in the classroom, that male DNA had been found on the victim's clothing in the area she said she was touched, and that another student had "partially substantiated" the complainant's allegation. None of that was true, but when asked if any of this made sense to him, Mr. Pico stated "[y]eah, I remember." Mr. Pico then provided D.T.'s name and described how he "tickled" and massaged her leg. Further questioning resulted in Mr. Pico's acknowledgement that, in the course of this behavior, he had moved his hand under her pants, but claimed it was inadvertent. Detective Rich accused Mr. Pico of putting his hand down D.T.'s pants twice and that he had done so "intentionally rather than just by mistake." Mr. Pico responded "I don't know. I don't—I don't recall ever doing it the second time, but it shouldn't have happened the first time, right." And when Detective Rich suggested that, "[o]nce you walked out of that class I bet you were—well, you were probably just sick to your stomach," Mr. Pico responded "Yes."

¶6 The State charged Mr. Pico with one count of first-degree sexual assault of D.T., contrary to Wis. Stat. §§ 948.02(1)(e) and 939.50(3)(b) (2011-12).[5] The case went to trial, following which the jury found Mr. Pico guilty as charged. He received his sentence in due course, during which the circuit court commented on Mr. Pico's lack of remorse:

---

[5] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

4

What I mean when I say that is acknowledging your conduct . . . I will consider whether or not you demonstrate remorse as a part of my sentence.

. . . .

I'm offended that you don't have the courage to recognize, and don't give me a half story of I touched her but not enough, I didn't touch her in the way she said. I don't accept it, Mr. Pico. That's half a loaf.

¶7 Mr. Pico filed a postconviction motion seeking a new trial and resentencing, asserting that his trial counsel provided constitutionally-inadequate assistance because, inter alia, he failed to investigate an old brain trauma. Twenty years before these events, Mr. Pico had suffered a motorcycle accident that resulted in an injury to the frontal lobe of his brain. The injury caused Mr. Pico to experience double vision, for which he still wears an eyepatch. The eyepatch, Mr. Pico says, should have alerted trial counsel to the need to investigate his mental capacity. That investigation, he claims, would have led to his medical records, and the records would have caused a reasonable attorney to suggest to his client that he may wish to consider a plea of not guilty by reason of mental disease or defect.[6] Mr. Pico believes the records also would have provided support for a motion to suppress the statements he made to Detective Rich because the injury left him unusually susceptible to the "Reid technique" Detective Rich had used.

---

[6] "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." Wis. Stat. § 971.15(1).

¶8  Mr. Pico's motion also claimed his counsel was ineffective because of several alleged errors during the course of his trial.  He says his trial counsel should have presented an expert to establish that the "Reid technique" can produce false confessions.  Additionally, he faults his counsel for not presenting an expert witness in response to Ms. Sarah Flayter, a child advocacy interviewer, who testified for the State about her forensic interview of D.T.  He also believes his counsel should have objected to some of Detective Rich's trial testimony, as well as to some of the statements Detective Rich made during Mr. Pico's recorded interview, which were played for the jury.  Further, he faulted trial counsel for not introducing evidence that D.T. had just learned about "good touches" and "bad touches" in school.  And finally, he thinks his counsel should have called Mr. Pico's wife as a witness to explain that their daughter has a sensory disorder and that they have learned that massaging her leg calms her.

¶9  The postconviction motion's final assignment of error relates to the alleged enhancement of Mr. Pico's sentence for failing to show remorse.  He did not show remorse, Mr. Pico says, because he is innocent of the crime for which he was convicted.  Increasing the sentence of a defendant who does not demonstrate remorse because he maintains his innocence, he

6

argues, comprises punishment for exercising his right to remain silent.[7]

¶10 The circuit court conducted a Machner hearing at which it received testimony from several witnesses, including Mr. Pico's trial counsel and an attorney who testified about the reasonableness of trial counsel's representation. The circuit court concluded that Mr. Pico's counsel had performed deficiently and, although none of the errors standing alone prejudiced Mr. Pico, the cumulative effect was to deny him the effective assistance of counsel. Consequently, the court vacated the conviction.

¶11 The State appealed, arguing that Mr. Pico's counsel had not provided ineffective assistance. The State also asserted it was improper for the defendant to introduce expert testimony on the reasonableness of defense counsel's performance for purposes of the Strickland analysis. The court of appeals reversed the circuit court and reinstated Mr. Pico's conviction because it determined that trial counsel's representation was not deficient. However, it did not address the Strickland expert testimony question, nor did it address Mr. Pico's

---

[7] His motion further claimed the sentencing court improperly considered his California conviction. However, he did not address this issue here, so we will not address it. A.O. Smith Corp. v. Allstate Ins. Cos., 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised on appeal, but not briefed or argued, is deemed abandoned.").

sentencing claim because he did not raise the issue in a cross-appeal.

¶12 We granted Mr. Pico's petition for review, and now affirm.

## II. STANDARD OF REVIEW

¶13 An ineffective assistance of counsel claim presents a mixed question of fact and law. State v. Tourville, 2016 WI 17, ¶16, 367 Wis. 2d 285, 876 N.W.2d 735. We will not reverse the circuit court's findings of fact unless they are clearly erroneous. Id. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.'" State v. Thiel, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted). We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel. Id.

¶14 The imposition of a criminal sentence involves the circuit court's exercise of discretion. We apply the "erroneous exercise of discretion" standard in reviewing such decisions. State v. Loomis, 2016 WI 68, ¶30, 371 Wis. 2d 235, 881 N.W.2d 749 ("'This court reviews sentencing decisions under the erroneous exercise of discretion standard.'" (citation omitted)). "An erroneous exercise of discretion occurs when a circuit court imposes a sentence 'without the underpinnings of an explained judicial reasoning process.'" Id. (citation omitted).

¶15 "Whether to admit proffered expert testimony rests in the circuit court's discretion." State v. LaCount, 2008 WI 59,

8

¶15, 310 Wis. 2d 85, 750 N.W.2d 780 (internal quotation marks omitted) (quoting State v. Shomberg, 2006 WI 9, ¶10, 288 Wis. 2d 1, 709 N.W.2d 370). "[O]ur review of a circuit court's use of its discretion is deferential, and we apply the erroneous exercise of discretion standard." LaCount, 310 Wis. 2d 85, ¶15. We will not overturn the circuit court's exercise of discretion so long as the decision "had 'a reasonable basis,' and if the decision was made 'in accordance with accepted legal standards and in accordance with the facts of record.'" Id. (citation omitted). We may also "search the record for reasons to sustain the circuit court's exercise of discretion." Id.

### III. ANALYSIS

¶16 We begin our analysis with Mr. Pico's argument that the court of appeals supplanted the circuit court's role as the finder of fact in the Machner hearing. We then consider the admissibility of expert testimony regarding the reasonableness of defense counsel's performance. Finally, we address Mr. Pico's argument that the circuit court imposed a harsher sentence on him because he refused to admit his guilt.

### A. Ineffective Assistance of Counsel

¶17 We review Mr. Pico's ineffective assistance of counsel claim because he says the court of appeals did not properly distinguish between findings of fact and conclusions of law when it conducted the Strickland analysis. Specifically, he says that the court of appeals "disagreed with every one of [the circuit court's] findings and substituted its own findings of fact and weight to be placed on the evidence." Of the many

9

reasons Mr. Pico believes his counsel was constitutionally ineffective, the most significant is his insistence that trial counsel should have explored Mr. Pico's mental capacity further than he did. We will address this assignment of error in some detail as a means of exploring the method by which the court of appeals reviewed the circuit court's decision. Then we will consider whether the court of appeals deviated from that methodology as it addressed the remaining claims of defective performance.

¶18 The "effective assistance of counsel" is a right vouchsafed to every criminal defendant by the Sixth Amendment to the United States Constitution.[8] Strickland, 466 U.S. at 686. A defendant is denied that right when his counsel performs deficiently, and the deficiency prejudices his trial. See State v. Pitsch, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985); see also Strickland, 466 U.S. at 687.

¶19 The first prong of the Strickland analysis requires us to compare counsel's performance to the "wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Only if his conduct falls outside that objectively reasonable range will we conclude that counsel performed deficiently. Thiel, 264 Wis. 2d 571, ¶19. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated

---

[8] See U.S. Const. amend. VI; Wis. Const. art. I, § 7.

from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 88 (2011). We presume that counsel's assistance fell within that range. Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .").

¶20 To show prejudice (the second prong), a defendant must establish "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Pitsch, 124 Wis. 2d at 642 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A lack of confidence arises when "'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (quoting Strickland, 466 U.S. at 687). The court need not address this prong if the petitioner fails to satisfy the first prong. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."); State v. Carter, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695 ("to succeed on [a] claim of ineffective assistance of counsel, [the defendant] must satisfy both prongs of the Strickland test.").

11

### 1. Trial Counsel's Duty to Investigate

¶21 Mr. Pico says his eyepatch, along with his confusion during his interview with Detective Rich, should have caused trial counsel to investigate his mental capacity. If he had done so, Mr. Pico argues, his counsel would have discovered the significance of his head injury, which would have, in turn, caused counsel to suspect it may have compromised his mental capacity. Mr. Pico believes his compromised condition may have prevented him from forming the intent necessary to support a criminal conviction. If trial counsel had known this, Mr. Pico concludes, his counsel would have advised him on the possibility of entering a plea of not guilty by reason of mental disease or defect. Mr. Pico also says his injury makes him unusually susceptible to suggestion. Therefore, even if a plea of not guilty by reason of mental disease or defect had not been appropriate, this information could have provided support for a motion to suppress the statements he made to Detective Rich. Without the investigation, however, neither of these strategic options were available.

¶22 The duty to investigate is certainly one of the components of effective representation. "Counsel must either reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation unnecessary." State v. Domke, 2011 WI 95, ¶41, 337 Wis. 2d 268, 805 N.W.2d 364. We review the reasonableness of trial counsel's decisions not with the benefit of hindsight, but in the context of the circumstances as they existed at the time he made his

12

decisions. "We must consider the law and the facts <u>as they existed</u> when trial counsel's conduct occurred." <u>State v. Felton</u>, 110 Wis. 2d 485, 502-03, 329 N.W.2d 161 (1983) (emphasis added); <u>see also</u> <u>Strickland</u>, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). So we examine the circumstances as if we were encountering them just as trial counsel did, making every effort to ensure our knowledge of the present does not affect how we assess what was known to him at the time. Therefore, we begin with a précis of pre-trial facts.

¶23 Mr. Pico's counsel acknowledged that he had been aware of Mr. Pico's head injury since his first meeting with him. He said the intake process for new clients includes a discussion of the client's medical conditions and diagnosis. During this process, he asked Mr. Pico about his eye patch. Mr. Pico described his motorcycle accident and head injury, but indicated he had recovered. His counsel said he subsequently discussed this injury with both Mr. Pico and his family. No one mentioned any lingering effects of the accident (other than the double vision), nor did anyone say it had affected Mr. Pico's behavior. To the contrary, Mr. Pico's family described him as a great father and a well-adjusted individual who was productively involved in his community. Trial counsel observed nothing about

13

Mr. Pico's conduct to call any of those characterizations into question.

¶24 Mr. Pico now claims his confusion and nervousness during the interview with Detective Rich should have been enough to inform his counsel that his mental capacity was questionable. Trial counsel witnessed that behavior when he reviewed the recorded interview, and he discussed it with Mr. Pico. But Mr. Pico did not connect his conduct to his head injury. Instead, he said that when Detective Rich arrived at his home, he was confused because he thought perhaps one of his children might have been involved in an emergency situation. So trial counsel attributed Mr. Pico's confusion and nervousness to the surprising nature of Detective Rich's visit and the fact that he was being questioned about a very serious crime.[9]

¶25 At the Machner hearing, Mr. Pico presented Dr. Horace Capote, a neuropsychiatrist, to explain the significance of the head trauma he had suffered in the motorcycle accident. Dr.

---

[9] Mr. Pico's counsel said he actually did consider the possibility of a plea of not guilty by reason of mental disease or defect, as was his standard practice. He explained that, in evaluating whether such an approach may be appropriate, he considers a number of factors, including the client's social history, how the client interacts, whether the client is logical and makes sense, whether the client has ever had any mental health issues, and whether he observed symptoms that caused him to believe that a further exploration of mental capacity was necessary. He chose not to pursue this option because he did not observe anything suggestive of ongoing symptoms related to the brain injury (other than the double vision) that would support an NGI defense.

14

Capote said Mr. Pico's records reflect that he had been diagnosed with "frontal lobe syndrome," the symptoms of which include deficits in cognitive, emotional, and behavioral functioning. Mrs. Pico testified at the Machner hearing that Mr. Pico shuts down when faced with frustration, that he often tells the same long, boring stories, that he avoids confrontation, and that he often gives in to what others want. Dr. Capote said this is consistent with frontal lobe syndrome.

¶26 Mr. Pico's post-hoc explanations about the seriousness of his head injury, however, miss the point. An investigation into a client's mental capacity is unwarranted unless the information known before trial suggests the need for such an exploration. Mr. Pico's presentation at the Machner hearing did not provide the type of information necessary for the court to assess the reasonableness of trial counsel's decision not to pursue that investigation. His expert, Dr. Capote, never examined him. Instead, he based his testimony on a review of 20-year-old records. Therefore, Dr. Capote could offer no opinion about whether behavior contemporaneous with Mr. Pico's criminal charge could have informed a reasonable attorney of the need to investigate his client's mental capacity. Had the information presented by Dr. Capote been known to Mr. Pico's counsel prior to trial, it may have been enough to require him to further investigate Mr. Pico's mental capacity. But the important point here is that it was not known to counsel before trial. If we were to apply that information retrospectively to evaluate counsel's pre-trial strategic decisions, we would be

15

doing exactly what Strickland prohibits, to wit, evaluating counsel's performance with the "distorting effects of hindsight[.]" Strickland, 466 U.S. at 689.

¶27 The information available to Mr. Pico's counsel before trial was much more limited than what Mr. Pico presented at the Machner hearing. He knew that Mr. Pico experienced double vision as the result of a motorcycle accident, and that he was flustered when questioned by the police about a very serious crime. Mr. Pico expects these two facts to carry more weight than they can bear. "In evaluating counsel's decision not to investigate, this court must assess the decision's reasonableness in light of 'all the circumstances,' 'applying a heavy measure of deference to counsel's judgments.'" Carter, 324 Wis. 2d 640, ¶23 (quoting Strickland, 466 U.S. at 691). Double vision and nervousness during a police interview, alone, are insufficient to suggest there may be a need to investigate the defendant's mental capacity. There is nothing in the record suggesting double vision interferes with (or impacts or affects or alters) mental capacity. And nervousness under these circumstances could be the result of any number of factors that have nothing to do with a brain injury.

¶28 Accordingly, we conclude that trial counsel's decision not to further investigate Mr. Pico's mental capacity was reasonable and fell within the "wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In the absence of the investigation, there was no basis for Mr. Pico's attorney to counsel Mr. Pico on the advisability of a plea of

not guilty by reason of mental disease or defect.  Nor was there a basis for a motion to suppress the statements Mr. Pico made to Detective Rich.  This necessarily means trial counsel could not have performed deficiently with respect to those topics because an attorney does not perform deficiently when he chooses not to pursue tactics that lack factual or legal support.  See State v. Cameron, 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611 ("It is not deficient performance for counsel not to make a pointless objection."); see also State v. Jacobsen, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365 ("An attorney does not perform deficiently by failing to make a losing argument."); State v. Swinson, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12 ("Trial counsel's failure to bring a meritless motion does not constitute deficient performance."); State v. Toliver, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) ("[Defendant] has failed to show that trial counsel's performance was deficient and thus, we determine his ineffective assistance of counsel claim is meritless.").

*

¶29 We arrive at the same conclusion as the court of appeals with respect to trial counsel's duty to investigate. But more importantly for the issue at hand, we see no error in the court of appeals' methodology in reaching that conclusion.

¶30 As we conducted each step of our analysis, we kept careful watch for any of the circuit court's factual findings that would impede or contradict our (or the court of appeals') reasoning.  We identified only one (more about that in a

moment). In all other instances, Mr. Pico's claim that the court of appeals simply ignored the circuit court's findings of fact in favor of its own is unsupported by the record. Instead, his argument indicates he mistook the circuit court's conclusions of law for findings of fact. Thus, he says the circuit court "found" that his counsel should have investigated his injury because it would have a significant effect on his case, so he concluded the court of appeals improperly rejected that "finding" when it concluded no such investigation was necessary. Similarly, he says the court of appeals "found because there was no proof the family or Pico told [his counsel] about the significance of the brain damage, he had no duty to investigate or raise the issue in any way." Further, he argues the court of appeals "disregarded the [circuit court's] factual finding that the attorney decided not to investigate, and that deficiency led to the conviction."

¶31 A court's factual findings address the "who, what, when, and where" of a case.[10] In the specific context of an ineffective assistance of counsel claim, "[f]indings of fact include 'the circumstances of the case and the counsel's conduct and strategy.'" Thiel, 264 Wis. 2d 571, ¶21 (citation omitted).

---

[10] See, e.g., Fact, Black's Law Dictionary (10th ed. 2014) (defining a "fact" as including "[s]omething that actually exists[,]" "not just tangible things, actual occurrences, and relationships, but also states of mind such as intentions and the holding of opinions[,]" and "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation.").

The court of appeals is duty-bound to defer to those factual findings unless they are clearly erroneous.

¶32 Thiel's reference to "counsel's conduct and strategy," however, does not encompass the wisdom or constitutional sufficiency of that conduct or strategy. Thiel contemplates a simple accounting of historical events: What did counsel do, and what strategy did he employ? Whether the factual description of counsel's strategy and conduct add up to deficient performance is a question of law that is subject to de novo review. "The questions of whether counsel's behavior was deficient and whether it was prejudicial to the defendant are questions of law, and we do not give deference to the decision of the circuit court." Pitsch, 124 Wis. 2d at 634; see also State v. Knight, 168 Wis. 2d 509, 514 n.2, 484 N.W.2d 540 (1992) ("The final determination of whether counsel's performance was deficient and prejudiced the defense are questions of law, however, and a reviewing court need not grant deference to the decisions of the circuit court.").

¶33 Thus, when Mr. Pico claims the circuit court "found" that his counsel should have investigated Mr. Pico's mental capacity more extensively than he did, he is not referring to a factual finding at all, but to a conclusion of law. We determine whether trial counsel's investigation should have been more extensive by applying the legal standard to the known facts. Here, the standard is that counsel must "either reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation

19

unnecessary." Domke, 337 Wis. 2d 268, ¶41. In applying that standard to the known facts, the court of appeals owed no deference to the circuit court because this is a question of law. See Pitsch, 124 Wis. 2d at 634; see also Knight, 168 Wis. 2d at 514, n.2. Likewise, when Mr. Pico complains that the court of appeals "found because there was no proof the family or Pico told [trial counsel] about the significance of the brain damage, he had no duty to investigate or raise the issue in any way," he is recasting a legal conclusion as a finding of fact. The court of appeals did not, in so concluding, "find" anything. It applied the standard (reasonable investigation) to the fact (neither "the family [n]or Pico told [trial counsel] about the significance of the brain damage") and arrived at its legal conclusion (no duty to investigate further). The same is true of Mr. Pico's claim that the court of appeals was obligated to defer to the circuit court's "factual finding that the attorney decided not to investigate, and that deficiency led to the conviction." The extent of trial counsel's investigation is undisputed. But the circuit court and court of appeals differed on whether this comprised a "deficiency" that "led to the conviction." That disagreement, of course, is about whether the agreed facts satisfy a legal standard. As such, it is a question of law on which the court of appeals owed no deference to the circuit court.

¶34 Mr. Pico did accurately identify that the court of appeals set aside one of the circuit court's factual findings as it analyzed his counsel's duty to investigate. It is the same

one we were constrained to set aside.   The circuit court said trial counsel did not discuss Mr. Pico's head injury with his family.   That finding was clearly erroneous because the transcript from the Machner hearing unequivocally demonstrates that trial counsel did have that conversation with Mr. Pico's family.   State v. Pico, No. 2015AP1799-CR, unpublished slip op., ¶46 n.6 (Wis. Ct. App. May 10, 2017).

### 2.   Defense Counsel's Trial Performance

¶35 Mr. Pico also believes he received ineffective assistance of counsel because of how his counsel conducted his trial.   He is dissatisfied with trial counsel's choice of witnesses, his failure to object to certain testimony, the lack of motions in limine to prevent the exploration of some topics during trial, and his decision not to introduce evidence Mr. Pico believes would have been helpful to him.   Much, but not all, of Mr. Pico's argument on this score is the same as above, to wit, that the court of appeals substituted its own judgment for the circuit court's factual findings.   He cites three additional instances in which he believes this occurred.   We will address each in turn.[11]

¶36 First, Mr. Pico says his counsel should have moved to suppress the statements he made during the police interview because Detective Rich used the "Reid technique."   The circuit

---

[11] Mr. Pico's briefs purport to identify other instances in which the court of appeals usurped the circuit court's fact-finding role.   But close examination reveals them to be repeats of allegations already made.

21

court agreed and said such a motion would have been successful. Mr. Pico characterizes that statement as a finding of fact that binds the court of appeals unless it was clearly erroneous. The potential success of such a motion, however, is not a matter of historical fact. It is a conclusion of law based on the circuit court's exercise of judgment in applying the appropriate legal standard to the circumstances comprising Detective Rich's interview with Mr. Pico. The court of appeals owed the circuit court no deference on this question. Mr. Pico's suppression argument depends on his injury-induced susceptibility to the "Reid technique." We have already concluded trial counsel had no duty to investigate this injury, and without that information the suppression motion would have been baseless. The court of appeals correctly concluded such a motion would not have been successful.

¶37 Mr. Pico's second allegation relates to his belief that his counsel should have called an expert to challenge Ms. Sarah Flayter's forensic interview techniques, to describe D.T.'s susceptibility to an interviewer's suggestion, and to explain the significance of some of the statements D.T. made during the interview. Mr. Pico says "the trial court found" that "an expert should have been consulted" on these subjects, and that if his counsel had done so, "it would have helped the defense case." The relevant factual finding here is that Mr. Pico's counsel did not introduce an expert witness to provide testimony on the identified subjects, a fact the court of appeals did not challenge. What it challenged was whether that

22

fact established that trial counsel should have called such an expert, an entirely unremarkable question of law. And how the result of the trial might have changed if Mr. Pico's counsel had presented expert testimony on these topics is actually the opposite of a factual finding——it is, indeed, a contrafactual. It is a hypothetical conclusion about a potential outcome flowing from the application of a legal standard to an alternative set of facts. It is, in short, informed speculation about a trial that never occurred. As such, it is not possible for this to be a matter of fact. The court of appeals did not err in choosing not to defer to the circuit court's conclusion about the expected result of a hypothetical trial.

¶38 Finally, Mr. Pico is concerned about certain statements introduced at trial that he believes improperly vouched for the credibility of the State's witnesses. He asserts that the circuit court "found" that trial counsel's failure to file a motion in limine to protect against such testimony was "constitutionally deficient." And he argues that, in disagreeing with the circuit court, the court of appeals improperly "substituted its beliefs for those of the judge who listened to the testimony at the hearing." But as we said in both Pitsch and Knight, whether an attorney's conduct was constitutionally deficient is a question of law, not fact. "Listening to testimony" is essential to the project of accurately finding facts; deciding questions of law can be done just as well by appellate tribunals.

23

¶39 Our review confirms that the court of appeals properly distinguished between findings of fact and conclusions of law. Consequently, it did not usurp the circuit court's fact-finding role when it concluded that trial counsel did not perform deficiently.[12] Still, Mr. Pico argued that several additional defects in his counsel's performance caused him to suffer the ineffective assistance of counsel. The court of appeals wrote an extensive and well-reasoned opinion addressing each of those claims, and we do not believe we would provide any additional value by repeating the good work it has already done. We adopt its reasoning on these claims as our own. Because trial counsel's performance was not deficient, we may conclude that Mr. Pico did not receive ineffective assistance of counsel without addressing the "prejudice" prong of the Strickland analysis. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components

---

[12] The court of appeals did set aside an additional factual finding while conducting this part of its review. However, it was justified in doing so. The circuit court apparently misunderstood part of trial counsel's testimony with respect to whether Ms. Flayter should have clarified one of D.T.'s statements. Trial counsel testified this task was necessary, but that it was for D.T., not Ms. Flayter, to provide the clarification. He also said Ms. Flayter did get D.T. to explain her ambiguous statement. The circuit court appears to have missed this testimony, and so found that a required clarification had not been made. The court of appeals is correct that this finding was clearly erroneous because the record unequivocally establishes that D.T.'s statement had been properly explained.

24

of the inquiry if the defendant makes an insufficient showing on one."); Carter, 324 Wis. 2d 640, ¶21 ("to succeed on [a] claim of ineffective assistance of counsel, [the defendant] must satisfy both prongs of the Strickland test.").

### B. Expert Strickland Testimony

¶40  At the Machner hearing, Mr. Pico called an attorney as an expert witness on the Strickland standard "to show what a reasonable attorney versed in the criminal law would and should do under the circumstances at issue in this case."  Wisconsin Stat. § 907.02 (2015-16) governs the admissibility of expert opinion testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

§ 907.02(1) (2015-16).  "Whether to admit proffered 'expert' testimony rests in the circuit court's discretion."  LaCount, 310 Wis. 2d 85, ¶15 (one set of quotation marks omitted).

¶41  The expert's task in the Machner hearing was to opine on how trial counsel ought to have handled Mr. Pico's defense. Presumably, that means he was supposed to do something more than argue that Mr. Pico's counsel should have conducted the defense differently.  If that had been his function, he should have been seated at counsel's table along with Mr. Pico's postconviction

25

attorney, not in the witness box. We presume his role was not duplicative. Nor was his purpose to provide a historical recitation of facts relating to trial counsel's conduct of Mr. Pico's case. Nor was he there to explain historical facts that the court was incapable of understanding on its own. That leaves only one role for the expert here——informing the court that, in his judgment, Mr. Pico's counsel did not perform as a reasonable attorney should have under those circumstances.

¶42 So the question we must answer is whether there is room in a Machner hearing for an expert witness's judgment on trial counsel's performance. Expert testimony is admissible to address questions of fact, not law. This is so because "the only 'expert' on domestic law is the court." See Wis. Patients Comp. Fund v. Physicians Ins. Co. of Wis., Inc., 2000 WI App 248, ¶8 n.3, 239 Wis. 2d 360, 620 N.W.2d 457 (input from experts regarding an attorney's ethical obligations is unnecessary because such obligations are questions of law reviewed de novo by the court; compiling cases); see also United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible . . . . [A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."); Itek Corp. v. Chicago Aerial Indus., Inc., 274 A.2d 141, 143 (Del. 1971) ("Testimony from an expert is inadmissible if it expresses the expert's opinion concerning applicable domestic law."); In re Estate of Ohrt 516 N.W.2d 896, 900 n.1 (Iowa 1994) ("Experts,

26

no matter how well qualified, generally should not be permitted to give opinions on questions of domestic law."); Jackson v. State Farm Mut. Auto. Ins. Co., 600 S.E.2d 346, 355 (W. Va. 2004) (quoting 32 C.J.S. Evidence § 634, at 503-04 (1996)) ("As a general rule, an expert witness may not give his [or her] opinion on a question of domestic law [as opposed to foreign law] or on matters which involve questions of law, and an expert witness cannot instruct the court with respect to the applicable law of the case . . . ." (alterations in original)).

¶43 The court's status as the only expert on domestic law is not a descriptive statement, but a normative one. Interpreting and applying the law to the facts of a particular case is the judiciary's responsibility, a responsibility it shares with no other when acting in its judicial capacity. Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶37, 376 Wis. 2d 147, 897 N.W.2d 384 ("No aspect of the judicial power is more fundamental than the judiciary's exclusive responsibility to exercise judgment in cases and controversies arising under the law."); see also Operton v. LIRC, 2017 WI 46, ¶73, 375 Wis. 2d 1, 894 N.W.2d 426 (R. Grassl Bradley, J., concurring) (indicating that "the court's duty to say what the law is" constitutes a "core judicial function"); In re Appointment of Revisor, 141 Wis. 592, 598, 124 N.W. 670 (1910) (stating that "it is the exclusive function of the courts to expound the laws"). In the context of a Machner hearing, that exclusive responsibility encompasses the exercise of its judgment on the reasonableness of counsel's performance: "[A] court . . . must

27

judge the reasonableness of counsel's challenged conduct on the facts of the particular case . . . ." Strickland, 466 U.S. at 690 (emphasis supplied). As we discussed above, this is a question of law, not fact. Pitsch, 124 Wis. 2d at 634 ("The questions of whether counsel's behavior was deficient and whether it was prejudicial to the defendant are questions of law, and we do not give deference to the decision of the circuit court.").

¶44 The court can, and must, reserve to itself the exercise of this responsibility in every case. And when "the court . . . is able to draw its own conclusions without the aid of expert testimony, 'the admission of such testimony is not only unnecessary but improper.'" Racine Cty. v. Oracular Milwaukee, Inc., 2010 WI 25, ¶28, 323 Wis. 2d 682, 781 N.W.2d 88 (quoting Cramer v. Theda Clark Mem'l Hosp., 45 Wis. 2d 147, 151, 172 N.W.2d 427 (1969)). Therefore, an expert's judgment about the reasonableness of how counsel handled the defense is superfluous not because he has no insights on the matter, but because his opinion is unnecessary as a matter of law.

¶45 Consequently, we hold that expert testimony about the "reasonableness" of counsel's performance is inadmissible because it addresses a question on which the court is the only expert. This is not a matter of first impression in this state. Faced with the same question we are addressing here, the court of appeals in State v. McDowell said "that no witness may testify as an expert on issues of domestic law" such as whether trial counsel rendered effective assistance. 2003 WI App 168,

28

¶62 n.20, 266 Wis. 2d 599, 669 N.W.2d 204, aff'd, 2004 WI 70, 272 Wis. 2d 488, 681 N.W.2d 500.  We are further persuaded this is a sound statement of the law for the reasons given by the Eleventh Circuit Court of Appeals:

> [T]he reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof. Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by the state courts, by the district court, and by this Court, each in its own turn.

Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998).

¶46 Our review of the record confirms that Mr. Pico's expert was "judg[ing] the reasonableness of counsel's challenged conduct on the facts of the particular case." See Strickland, 466 U.S. at 690.  Upon introducing the expert's testimony, postconviction counsel frankly acknowledged the expert witness would testify to "what a reasonable criminal attorney . . . should and should not" do.  The expert witness proceeded to do that very thing, opining (in part) that:  (1) an attorney who has been put on notice of an injury should "get the [medical] records" and should "chase the records if you know they're there"; (2) further investigation into the injury and its potential impacts would have been beneficial to the case; (3) knowledge of the brain injury and testimony about the resulting impact could have impacted strategic decisions; (4) experts should have been called to review Detective Rich's taped

29

interview of Mr. Pico and Ms. Flayter's forensic interview of D.T.; (5) there generally would not have been any downside to seeking expert review of or obtaining the good touch/bad touch materials D.T. learned in school; and (6) trial counsel should have objected to certain statements that amounted to "witness vouching." Ultimately, the expert witness asserted that he did not believe trial counsel provided constitutionally adequate representation.

¶47 When we analyzed Mr. Pico's claim that the court of appeals usurped the circuit court's fact-finding role, supra, we addressed some of the very topics on which the expert witness provided testimony. We said they presented questions of law, and there is no reason to reconsider that conclusion in determining whether it was appropriate for Mr. Pico's expert to opine on them. What trial counsel should or should not have done is not a question of fact. Nor is the soundness of his strategic or tactical decisions. And as we observed above, the likely effect of those decisions on the outcome of a hypothetical trial is informed speculation, not a statement of fact. Because this testimony addressed questions of domestic law, it was inadmissible. We conclude that Strickland expert testimony is admissible in the Machner context, but only to the extent the expert focuses on factual matters and does not offer his opinion on the reasonableness of trial counsel's conduct or strategy.

C.   Mr. Pico Is Not Entitled To A New Sentencing Hearing

¶48  Mr. Pico asserts that the circuit court violated his right against self-incrimination by increasing the severity of his sentence because he maintained his innocence at the sentencing hearing.[13]  We review a sentencing decision for an

---

[13] Mr. Pico also asserts that his counsel "was ineffective for failing to object" to the sentencing court's statements related to his maintenance of innocence at sentencing.  Mr. Pico does not develop any ineffective assistance of counsel claim as to this issue; however, because we conclude that the sentencing court did not err, Mr. Pico's counsel could not have been ineffective for not having objected.

31

erroneous exercise of discretion.[14] State v. Harris, 2010 WI 79, ¶30, 326 Wis. 2d 685, 786 N.W.2d 409. Such an error occurs if a court "imposes its sentence based on or in actual reliance upon clearly irrelevant or improper factors." Id. To establish such

---

[14] The State says Mr. Pico waived this issue by not filing a cross-appeal from the circuit court's order on the motion for postconviction relief, which granted him a new trial and vacated his sentence. The State says a cross-appeal was necessary because the circuit court vacated the sentence not because of a sentencing error, but because it concluded the conviction was constitutionally unsound. Regardless of the circuit court's reasoning, the result was an order vacating the sentence. A party appeals from a written order, not a circuit court's reasoning. See Wis. Stat. § 809.10(1)(b)2 (2015-16) (the notice of appeal shall identify "the judgment or order from which the person filing the notice intends to appeal and the date on which it was entered."); see also Neely v. State, 89 Wis. 2d 755, 758, 279 N.W.2d 255 (1979) (per curiam) (explaining that "[t]he word decision, as used in the statutes and the rules, refers to the result (or disposition or mandate) reached by the court of appeals."); Ramsthal Advert. Agency v. Energy Miser, Inc., 90 Wis. 2d 74, 75, 279 N.W.2d 491 (Ct. App. 1979) ("An order, to be appealable, must be in writing and filed."). A cross-appeal is necessary only when the respondent seeks a modification of the order from which an appeal is taken: "A respondent who seeks a modification of the judgment or order appealed from or of another judgment or order entered in the same action or proceeding shall file a notice of cross-appeal . . . ." Wis. Stat. § 809.10(2)(b) (2015-16). Mr. Pico wanted no modification; to the contrary, he wanted the court of appeals to affirm the vacation of his sentence. His "sentencing error" argument is an alternative basis for affirming that part of the circuit court's order. On appeal, a court may "'examine all rulings to determine whether they are erroneous and, if corrected, whether they would sustain the judgment or order which was in fact entered.'" Auric v. Cont'l Cas. Co., 111 Wis. 2d 507, 516, 331 N.W.2d 325 (1983) (citation omitted). If Mr. Pico were right about the sentencing court's error, correcting it would sustain the circuit court's vacation of his sentence. Therefore, no cross-appeal was necessary.

32

error, the defendant must prove "by clear and convincing evidence, that the sentencing court actually relied on irrelevant or improper factors." State v. Alexander, 2015 WI 6, ¶17, 360 Wis. 2d 292, 858 N.W.2d 662. This requires that the defendant establish both that the factor was improper or irrelevant and that the court relied on it. Id., ¶¶18-27.

¶49 The Fifth Amendment guarantees a criminal defendant the right against self-incrimination. U.S. Const. amend V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."). This right extends to sentencing, although a defendant may waive his Fifth Amendment right against self-incrimination in a bid for a lighter sentence. See Scales v. State, 64 Wis. 2d 485, 496-97, 219 N.W.2d 286 (1974) (The court may consider "a posttrial confession of guilt and an expression of remorse" "in mitigation of a sentence."). The failure to express remorse, however, can be used at sentencing only if it is one amongst other factors, and it receives no undue consideration:

> A defendant's attitude toward the crime may well be relevant in considering these things [i.e., Gallion-type factors[15]]. In this case we believe the trial court considered a variety of factors, giving no undue or overwhelming weight to any one in particular. The sentence imposed was well within the maximum for which the defendant might have been sentenced, and while it is evident that the defendant's failure to admit his guilt and his lack of remorse were factors in the

---

[15] See State v. Gallion, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197.

sentencing decision, we do not believe it was improper or an abuse of discretion.

State v. Baldwin, 101 Wis. 2d 441, 459, 304 N.W.2d 742 (1981); see also Williams v. State, 79 Wis. 2d 235, 239, 255 N.W.2d 504 (1977) (observing that circuit courts commit reversible error when they "[give] undue and almost overwhelming weight to the defendant's refusal to admit guilt.").

¶50 The transcript from Mr. Pico's sentencing hearing reflects that the court considered multiple factors——such as Mr. Pico's background, his family and support network, his medical history, the seriousness of the offense, the presentencing report, the impact on the community, and the risk of re-offending——in formulating the sentence.[16] It also reflects the court's reference to Mr. Pico's lack of remorse:

> A part of the problem that you have is how you're gonna go forward and you express yourself, and I believe you're to a degree very sincere. To a degree I'm not so sure you're willing to do what you need to do to find your way back into a life closer to normal.
>
> What I mean when I say that is acknowledging your conduct before this forum, before your family, before [D.T.'s family] in order to allow your children to hear it and to know what you've done is important, and I will consider whether or not you demonstrate remorse as part of my sentence.
>
> . . . .

---

[16] A circuit court must consider three main factors at sentencing: (1) the gravity of the offense; (2) the defendant's character; and (3) the need to protect the public. State v. Alexander, 2015 WI 6, ¶22, 360 Wis. 2d 292, 858 N.W.2d 662. The circuit court may also consider numerous secondary factors. See id.

I'm offended that you don't have the courage to recognize, and don't give me a half story of I touched her but not enough, I didn't touch her the way she said. I don't accept it, Mr. Pico. That's half a loaf.

¶51 Mr. Pico says this commentary is similar to Scales, in which we concluded the circuit court had improperly relied on the defendant's lack of remorse in imposing sentence. There, we were concerned with the circuit court's statement that "'[i]t is my judgment that until you demonstrate some remorse, until you acknowledge your responsibility for the crime that you have committed, probation is not in order and efforts at rehabilitation will come to naught. It is for that reason that it is my judgment . . . that I can do nothing but order your incarceration . . . ." Scales, 64 Wis. 2d at 494-95. We said "that fact alone [the failure to demonstrate remorse] cannot be used to justify incarceration rather than probation," and because the court identified no other basis for imposing incarceration, we reasoned that the "the procedure utilized at sentencing was coercive and in derogation of Scales' Fifth Amendment rights." Id. at 496-97.

¶52 Mr. Pico's comparison to Scales is not apt. The circuit court in Scales explicitly linked the defendant's lack of remorse to the decision to impose incarceration instead of probation. Here, there is quite obviously no explicit link between Mr. Pico's lack of remorse and a harsher sentence. Nor is there an implicit link. The circuit court's operative statement on this subject was simply "I will consider whether or not you demonstrate remorse as part of my sentence." Taken at

35

face value, that is an entirely appropriate and unremarkable statement——remorse is a proper factor to consider in developing a sentence. And as long as the court honors the principles of Baldwin and Williams, so is lack of remorse. The circuit court's statement indicates it may have addressed remorse in one of three ways. First, it might have applied no mitigating factor in recognition that Mr. Pico had expressed no remorse. Second, it might have used Mr. Pico's lack of remorse as the north star in developing his sentence. Last, the court may have considered Mr. Pico's lack of remorse as one factor amongst many in the exercise of its sentencing discretion. Of the three possibilities, only the second would be inappropriate. There is a strong public policy against interfering with the trial court's sentencing discretion, and the trial court is presumed to have acted reasonably. State v. Wickstrom, 118 Wis. 2d 339, 354, 348 N.W.2d 183 (Ct. App. 1984). It is Mr. Pico's responsibility to demonstrate the circuit court used its discretion erroneously in considering his lack of remorse. State v. Lechner, 217 Wis. 2d 392, 418, 576 N.W.2d 912 ("When a criminal defendant challenges the sentence imposed by the circuit court, the defendant has the burden to show some unreasonable or unjustifiable basis in the record for the sentence at issue.").

¶53 Mr. Pico says his proof is that the circuit court "intimated it might" "send[] him home that day" if he confessed at sentencing. The circuit court intimated no such thing. Its only mention of anything even remotely close to that concept was

36

its reference to a letter from D.T. and her family indicating they might agree that a "time served" sentence would be acceptable if Mr. Pico admitted what he had done to D.T. In commenting on that letter, the court stated:

> Now, they [D.T.'s family] wanted to go so far as to hinge as to whether or not you'll be in the community versus whether or not you'll be housed in prison, and our system is more complicated than that. I have more things to consider in reaching that decision. Your lawyer referenced the Gallion factors and other factors that as a lawyer I have to——as a judge I have to consider. I'll look at all those in reaching a conclusion.

¶54 Not only does this commentary not support Mr. Pico's position, it does the opposite. This passage reflects the sentencing court's awareness of the totality of factors it was required to consider——and did consider——in ultimately imposing a bifurcated sentence of six years imprisonment followed by ten years extended supervision——a sentence far less than the 60 years of imprisonment he faced upon conviction. See Wis. Stat. §§ 948.02(1)(e) and 939.50(3)(b). We conclude there is no evidence the circuit court imposed a longer sentence on Mr. Pico because of his continued assertion of innocence. Therefore, Mr. Pico is not entitled to a new sentencing hearing.

IV. CONCLUSION

¶55 We conclude that Mr. Pico's trial counsel did not perform deficiently within the meaning of Strickland. We also conclude that expert testimony at a Machner hearing regarding the reasonableness of trial counsel's performance is not admissible. Finally, because Mr. Pico did not demonstrate that

37

the circuit court improperly relied on his lack of remorse in fashioning his sentence, he is not entitled to resentencing.

*By the Court.*—The decision of the court of appeals is affirmed.

¶56 REBECCA GRASSL BRADLEY, J. *(concurring).* I join the majority but write separately to clarify part III.B, which addresses expert Strickland testimony.[1] The majority says that Strickland expert testimony is inadmissible at the Machner hearing except "to the extent the expert focuses on factual matters and does not offer his opinion on the reasonableness of trial counsel's" performance.[2] Majority op., ¶47. This limitation could be misinterpreted as a total prohibition on such testimony. It is not.

¶57 The majority stops short of explaining what it means by "factual matters" at Machner hearings. I provide additional explanation to avoid any confusion. When a circuit court determines the testimony of a Strickland expert would be helpful, the expert may testify as to what actions a reasonable attorney could take in the same or similar circumstances. These include "factual matters" such as alternate actions the defendant's lawyer could have taken and different strategies defense counsel could have employed. The expert lawyer may also testify regarding the existence of alternative strategies available to defense counsel under the particular facts and

---

[1] Strickland v. Washington, 466 U.S. 668 (1984).

[2] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

circumstances of the case.[3]  However, the expert may not testify as to the ultimate question of law the circuit court must decide.  Specifically, the expert may not offer an opinion on whether the trial lawyer performed deficiently.  That is a question of law left to the circuit court.

¶58 Although expert criminal lawyer testimony is not required at a Machner hearing, in certain cases the circuit court may perceive this testimony to be helpful.  "Whether to admit proffered 'expert' testimony rests in the circuit court's discretion."  State v. LaCount, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780.  In most cases, the circuit court will not need expert lawyer testimony to decide the legal questions——it will simply apply Strickland to the facts and circumstances presented at the Machner hearing.  However, if a circuit court is unfamiliar with the practice of criminal law or the case presents factual features unfamiliar to even an experienced judge, Strickland expert testimony at the Machner hearing would

---

[3] While expert testimony on issues of law generally is inadmissible, the standard of care applicable to attorneys is not an issue of law but one of fact.  For example, in legal malpractice cases in Wisconsin, not only is expert testimony admissible, it is generally required to establish a breach of the standard of care.  See, e.g., Helmbrecht v. St. Paul Ins. Co., 122 Wis. 2d 94, 112, 362 N.W.2d 118 (1985) ("Expert testimony is generally necessary in legal malpractice cases to establish the parameters of acceptable professional conduct, given the underlying fact situation."); Pierce v. Colwell, 209 Wis. 2d 355, 362-63, 563 N.W.2d 166 (Ct. App. 1997) (holding plaintiff "was obligated to present expert testimony to sustain his claim that [lawyer's] alleged negligence caused injury or damage").

be helpful and the circuit court retains the discretion to hear it.  See LaCount, 310 Wis. 2d 85, ¶15; Wis. Stat. § 907.02.

¶59  I respectfully concur.

¶60  I am authorized to state that Justice DANIEL KELLY joins this concurrence.

¶61 SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. In an interview with law enforcement, the defendant gave equivocal statements regarding whether he touched the vagina of D.T., an eight-year-old girl. Given the circumstances of the instant case, advancing a reasonable doubt defense instead of properly investigating the defendant's frontal lobe injury amounted to deficient performance. In my view, a reasonable probability exists that but for trial counsel's failure to properly investigate the defendant's frontal lobe injury, the result of the defendant's trial would have been different.

¶62 Accordingly, I dissent.[1]

I

¶63 In Strickland v. Washington, the United States Supreme Court had this to say with regard to counsel's duty to investigate:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland v. Washington, 466 U.S. 668, 690-91 (1984).

---

[1] I agree with Justice Rebecca Grassl Bradley's concurrence insofar as it clarifies the "factual matters" about which an attorney expert may testify during a Machner hearing.

1

¶64 Put another way, "[c]ounsel must either reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation unnecessary." State v. Domke, 2011 WI 95, ¶41, 337 Wis. 2d 268, 805 N.W.2d 364. The reasonableness of counsel's decisions is judged in the context of the circumstances as they existed at the time counsel made those decisions. Strickland, 466 U.S. at 689; State v. Felton, 110 Wis. 2d 485, 502-03, 329 N.W.2d 161 (1983).

¶65 The following facts were known to the defendant's trial counsel at the time counsel made the decision not to further investigate the defendant's frontal lobe injury and instead pursue a reasonable doubt defense:

- The defendant was interviewed by a detective four days after the defendant visited his daughter's classroom. D.T. was a classmate of the defendant's daughter.

- During that interview, the detective employed the Reid technique, a technique that involves law enforcement officials lying to the interviewee by claiming to have strong incriminating evidence that they do not in fact possess in order to induce the interviewee to disclose factually accurate details about the events in question.

- Pursuant to the Reid technique and without identifying the victim, the detective told the defendant that a student in his daughter's class had accused him of touching her inappropriately, that there were video cameras in the classroom, that male DNA had been found

2

on the victim's clothing in the area she said she was touched, and that another student had partially substantiated the victim's allegation. Other than the fact that the defendant had been accused of inappropriately touching a student, none of what the detective told the defendant was true.

- When the detective asked if anything the detective had just said made any sense to the defendant, the defendant responded by saying, "Yeah, I remember." Although the detective never identified D.T. as the victim, the defendant provided D.T.'s name to the detective and described how he "tickled" and massaged D.T.'s leg.

- Further questioning by the detective resulted in the defendant acknowledging that at some point while tickling and massaging D.T.'s leg, he had moved his hand under her pants. The defendant claimed that moving his hand under D.T.'s pants was not intentional.

- The detective told the defendant that D.T. claimed that he touched her vagina twice. The defendant responded, "I don't recall. I don't. I don't know. I didn't. I don't know, sir. I don't remember that happening, but——." The detective followed up, "Is it possible?" The defendant responded, "[Y]eah." The detective asked, "Do you know why?" and the defendant answered, "I have no idea. I'm not sexually

3

repressed. I got a good sex life. I have kids. I wasn't thinking along those lines at all. I was just playing."

- In response, the detective accused the defendant of having intentionally put his hand down D.T.'s pants twice. The defendant responded by saying "I don't know. I don't——I don't recall ever doing it the second time, but it shouldn't have happened the first time, right."

- The detective then suggested that "[o]nce you walked out of that class I bet you were——well, you were probably just sick to your stomach." The defendant responded "Yes."

- Upon first meeting the defendant, trial counsel became aware of the defendant's brain injury. The defendant wears an eyepatch, and he explained to trial counsel that he suffers from double vision as a result of a traumatic brain injury to his frontal lobe caused by a serious motorcycle accident that occurred 20 years before the events giving rise to the instant case.

- The defendant told trial counsel that he had fully recovered from the accident, and neither the defendant nor his family told counsel that they had observed any behavior on the defendant's part that would indicate that the defendant's brain injury affected the defendant's behavior.

4

- Trial counsel, without bothering to obtain any of the defendant's medical records or consult with an expert knowledgeable about the connection between brain trauma and human behavior, chose not to further investigate because trial counsel did not observe any ongoing symptoms that he believed related to the defendant's brain injury.

¶66 Under these circumstances, I conclude that trial counsel's decision not to further investigate the defendant's frontal lobe injury and instead pursue a reasonable doubt defense constitutes deficient performance.

¶67 First, as would seem obvious from the recitation of facts above, a reasonable doubt defense was doomed to failure. Asked about whether the defendant had twice touched the vagina of an eight-year-old unidentified girl in her classroom during school just four days prior, the defendant identified the victim, acknowledged "tickling" her leg, and "[didn't] recall," or "[didn't] know" whether he had touched her vagina or not, but said that if he did, he did not do so intentionally. The majority is silent regarding the reasonableness of pursuing a reasonable doubt defense in light of this damning evidence.[2]

---

[2] The majority does, however, refer to the defendant's equivocation as "nervousness" or being "flustered." Majority op., ¶27. I find it unlikely that nervousness would cause someone to forget whether or not they had twice touched the vagina of an eight-year-old girl in her classroom during school just four days earlier.

¶68 Second, trial counsel's decision to not conduct further investigation into the defendant's brain injury was unreasonable under the circumstances. Both state and federal courts have found head injuries to be "red flags" that give rise to a duty for counsel to investigate further for neurological damage that may impact the client's case.[3]

¶69 In the instant case, trial counsel knew that the defendant suffered from double vision as a result of a traumatic brain injury to his frontal lobe caused by a serious motorcycle accident. Rather than consult with a neurologist about the effects of the defendant's brain trauma, or even obtain the defendant's medical records, trial counsel instead stopped his investigation after being told by the defendant and his family that they did not notice anything abnormal about the defendant's behavior. In my view, trial counsel did not do enough to discharge his duty to adequately investigate the defendant's frontal lobe injury and its impact on the defendant's case.

¶70 Given the impossible odds of a successful reasonable doubt defense, trial counsel's performance was not reasonable

---

[3] See Ellen G. Koenig, A Fair Trial: When the Constitution Requires Attorneys to Investigate Their Clients' Brains, 41 Fordham Urb. L.J. 177, 211-12 (2013) (collecting cases); Richard E. Redding, The Brain-Disordered Defendant: Neuroscience and Legal Insanity in the Twenty-First Century, 56 Am. U. L. Rev. 51, Appendix (2006) (listing 45 cases in which counsel was deemed ineffective for failing to investigate when counsel either knew that the client suffered a traumatic brain injury or would have learned that information by conducting a proper investigation).

under prevailing professional norms and was therefore constitutionally deficient.[4]

## II

¶71 In addition to proving that trial counsel's performance was constitutionally deficient, the defendant must also prove that he was prejudiced by trial counsel's deficient performance. This requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability under the Strickland prejudice prong is a probability sufficient to undermine confidence in the outcome." Winnebago Cty. v. J.M., 2018 WI 37, ¶49, 381 Wis. 2d 28, 911 N.W.2d 41.[5]

¶72 I conclude that the defendant has shown prejudice in the instant case. Had trial counsel properly investigated the defendant's frontal lobe injury, he would have learned that the defendant suffered from frontal lobe syndrome. Trial counsel would have learned that as a result of the defendant's frontal lobe injury, the defendant suffered from a significant decrease in IQ; deficits to cognitive, emotional, and behavioral functioning; and abnormal impulsivity. Trial counsel also would

---

[4] Strickland v. Washington, 466 U.S. 668, 688 (1984).

[5] See also Winnebago Cty. v. J.M., 2018 WI 37, ¶49, 381 Wis. 2d 28, 911 N.W.2d 41 ("This statement of the prejudice prong corresponds with another oft-quoted statement from Strickland about the prejudice prong, namely that the defendant was prejudiced if he or she was deprived of a fair trial whose result is reliable.").

7

have learned that symptoms of frontal lobe syndrome include the tendency to not read social cues well. Had trial counsel consulted a doctor regarding the defendant's brain injury and its symptoms, he would have realized (and the defendant's family would have corroborated) that, consistent with frontal lobe syndrome, the defendant shuts down when faced with frustration, and often gives in to what others want in order to avoid confrontation.

¶73 Trial counsel's failure to properly investigate the defendant's frontal lobe injury prejudiced the defendant in at least two ways.

¶74 First, the information that would have been obtained through a proper investigation would have supported a plea of not guilty by reason of mental disease or defect. Given how disastrous a reasonable doubt defense was under the circumstances, pleading not guilty by reason of mental disease of defect may have been the only reasonable strategy to pursue.

¶75 Second, even if trial counsel chose to advance a reasonable doubt defense, trial counsel should have presented evidence of the defendant's frontal lobe syndrome and its symptoms to mitigate the effect of the inculpatory statements made to the detective during the interview. Coupled with testimony about the unreliable nature of the Reid technique and its likelihood of producing false confessions,[6] the defendant

---

[6] The defendant presented expert testimony to this effect at the Machner hearing.

8

could have significantly mitigated the effect of his equivocal statements regarding whether he had inappropriately touched D.T.

III

¶76 As our understanding of the connection between brain trauma and criminal behavior develops, defense attorneys must be on increased alert for red flags indicating neurological damage that could have an impact on their clients' cases. In the instant case, the defendant's trial counsel knew that the defendant suffered a traumatic brain injury to his frontal lobe but failed to properly and adequately investigate whether and to what extent that trauma affected the defendant's case. Trial counsel's failure to properly investigate the defendant's brain injury prejudiced the defendant by causing him to argue an ill-fated reasonable doubt defense that was unreasonable under the circumstances.

¶77 I would conclude that the defendant succeeded in proving his claim of ineffective assistance of counsel and is entitled to a new trial.

¶78 For the foregoing reasons, I dissent.

¶79 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

9