PER CURIAM.
¶ 1 Ronald Morgan appeals a judgment of conviction, entered upon a jury's verdict, for multiple sex offenses against fifteen-year-old Albert,[1] as well as an order denying him postconviction relief. Morgan seeks a new trial, asserting that his trial attorney was constitutionally ineffective by failing to object to certain testimony from the victim's mother and by permitting the prosecution to play a videotaped statement the victim gave a few days after the incident. We conclude Morgan has failed to demonstrate a reasonable probability of a different outcome even if the challenged evidence had been excluded as inadmissible hearsay. Accordingly, we affirm.
BACKGROUND
¶ 2 Morgan was charged with three counts of sexual assault of a child under sixteen years of age, as well as a single count of exposing a child's genitals.[2] Albert was the State's primary witness at trial. He testified that he was present with his immediate family at a relative's home for a family gathering in Marathon County on Saturday, August 24, 2013. Albert and his family had planned to sleep overnight in a camper on the relative's property.
¶ 3 Albert and Morgan were both present at the family gathering. Albert, Morgan, and a few other people were "hanging out in the garage" after the others had gone to bed. Between 12:00 and 12:30 a.m. on August 25, the other individuals present in the garage went to sleep, leaving Albert and Morgan alone. Albert testified that he could smell alcohol on Morgan's breath.
¶ 4 Albert testified that, as he and Morgan were speaking, Morgan was seated across from Albert, facing him. Morgan placed his hands on Albert's thighs. Albert felt uncomfortable, but he thought it was "some joke" and put his hands on Morgan's kneecaps. Morgan moved his hands farther up Albert's thighs, until they were partially underneath his shorts. Morgan then asked Albert, "Have you thought about it?" Albert said he did not know what Morgan meant. Morgan started rubbing his hands on Albert's thighs and said, "You know." Albert testified he did not know what Morgan was talking about, and he took his hands off Morgan's knees.
¶ 5 Albert further testified that during the ensuing silence, he "got a hint" that he knew what Morgan was talking about, although Albert could not recall what he said to Morgan in response. Morgan continued to ask whether Albert had "ever thought about it," and Albert responded, "Thought about sex? Anal sex?" Morgan said "No, not that," and he asked whether Albert "want[ed] to try it, fly by night?" Morgan then put his hands farther up Albert's shorts, touching his underwear.
¶ 6 Albert testified he then stood up and Morgan remained sitting. Albert further testified Morgan "slid his hands up my shirt and was rubbing my nipples." Morgan then pulled down Albert's shorts and underwear and began fondling Albert's genitals. Morgan kissed Albert while he was fondling him. Albert testified he did not run because he was afraid Morgan would chase him, and he did not scream because he was afraid his family would come out and see what was happening.
¶ 7 Morgan told Albert that he had been "watching [him]" and that he "might wait for [him]" until he turned eighteen and graduated from high school. Morgan then performed oral sex on Albert. Morgan stopped when he saw a camper's lights turn on. Albert then pulled up his underwear and shorts, and he eventually told Morgan he was going to bed.
¶ 8 Albert testified that when he returned to his family's camper, he did not tell his parents what had just happened with Morgan. His family left the following morning and returned to their home Sunday night. On Monday, August 26, 2013, Albert went to a band camp and had planned to bike home. On his way home, Albert was caught in the rain and ultimately called his mother, Jennifer, to pick him up. However, due to a miscommunication, his mother did not know where he was after camp, and she was "furious" when she had to pick him up.
¶ 9 Jennifer was still mad at Albert the following morning. Albert testified that, as they drove to a meeting that morning, he told his mother he had something to tell her. He told her "partly" what had happened with Morgan, and she phoned her husband, Albert's stepfather, who was a police officer. Police collected Albert's clothing and a nurse performed a sexual assault examination, but the authorities were unable to recover any of Morgan's DNA or any other physical evidence of the sexual assaults.
¶ 10 At trial, Jennifer recounted her conversation with Albert in the car during which Albert first told her about the sexual assaults. She testified Albert started to cry and was "very overwhelmed with emotion," and he told her in detail some of the things that had happened. Jennifer testified that Albert had told her that Morgan put his hands on Albert's thighs and said, "It's been a long time since I've touched or had felt hairy thighs like this." Albert also told Jennifer, "Mom, I think this has happened before" and "Mom, you don't know, but there's worse." Jennifer said she was "very sick to [her] stomach" as Albert related how Morgan had "put his mouth on [Albert's] penis."
¶ 11 Albert was taken to the Child Advocacy Center in Wausau, where he gave a videotaped statement to a forensic interviewer. The recording, which was approximately one hour long, was played for the jury during the forensic interviewer's testimony. Albert's statements to the forensic interviewer regarding the incident with Morgan were generally consistent with his trial testimony. There were minor differences, however, including Albert's statement during the interview that Morgan "pulled back" several times when he had his hands on Albert's thighs, as if Morgan was having reservations about his conduct.
¶ 12 Morgan's attorney did not object to Jennifer's testimony, nor to the playing of Albert's recorded forensic interview. On the morning of the trial's first day, Morgan's attorney had filed a handwritten motion in limine to preclude the State from playing the recorded interview. Morgan's attorney did not continue his objection after the State represented that it would be calling Albert to testify before his recorded statement was played.
¶ 13 The other evidence at trial included the testimony of the sexual assault nurse who examined Albert. Among other things, she testified as to what Albert told her about the assault. Additionally, a police detective testified regarding an interview he had with Morgan at the Marathon County Sheriff's Department following Albert's interview at the Child Advocacy Center. During the police interview, Morgan stated he had been drinking on the night in question, and he denied being able to remember anything more than touching Albert's legs and "joking" with him. However, Morgan also repeatedly agreed that Albert was a truthful person and "wouldn't make up a story." Morgan further agreed that Albert was "a pretty bright kid," he had "a really good memory," and he was "a standout detail[-]oriented person." Morgan acknowledged that he and Albert had engaged in "small talk" regarding homosexuality during the family gathering.
¶ 14 There were no defense witnesses, and Morgan elected not to testify. Instead, during its closing argument, the defense emphasized the lack of DNA evidence and the lack of eyewitnesses. The defense did not offer a possible motive for fabrication, but trial counsel did observe that Jennifer was mad at Albert in the days following the assault, and he opined that there were some "strange dynamics" in their family. The jury returned guilty verdicts on all counts.
¶ 15 Postconviction counsel was appointed for Morgan, and he filed several postconviction motions.[3] As relevant here, Morgan alleged he received constitutionally deficient performance from his trial attorney. Morgan argued Albert's statements to his parents and Albert's videotaped interview were inadmissible and prejudicial hearsay, and his counsel should have objected to them. Morgan alternatively argued that a new trial was warranted in the interest of justice.
¶ 16 Following a Machner[4] hearing, the circuit court denied Morgan's motion in an oral ruling. The court first concluded that the statements Albert made during his recorded interview were hearsay and inadmissible under any exception to the hearsay rule.[5] The court also appears to have assumed Albert's statements to his mother were inadmissible hearsay, although the court did not specifically analyze that issue. However, the court determined that, after examining the totality of the evidence, there was no reasonable probability of a different outcome had Morgan's trial counsel performed adequately.
¶ 17 The circuit court, in particular, concurred with the opinion of Morgan's trial attorney that Albert, "a very credible witness," gave "compelling testimony" at trial. The court noted Morgan did not testify at trial to deny Albert's allegations. It also noted that Morgan, in his recorded interview, never directly denied Albert's allegations and, rather, repeatedly vouched for Albert's truthful character. Finally, the court observed that Albert's allegations of physical contact during the Child Advocacy Center interview aided the defense strategy, which was to emphasize that Morgan's DNA was not found on Albert's clothing or body. Morgan now appeals.
DISCUSSION
¶ 18 Morgan raises the same ineffective assistance of counsel claims on appeal. An ineffective assistance of counsel claim presents a mixed question of fact and law. State v. Pico , 2018 WI 66, ¶ 13, --- Wis. 2d ----, 914 N.W.2d 95. The circuit court's findings of fact, which include the circumstances of the case and defense counsel's conduct and strategy, will not be reversed unless they are clearly erroneous. Id. "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." Id.
¶ 19 A defendant must show two things to obtain a new trial based on ineffective assistance of counsel. First, he or she must show that his or her attorney provided deficient representation. State v. Erickson , 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). Second, the defendant must show that the deficiency prejudiced his or her defense. Id. If a defendant fails to make a sufficient showing on one prong, we need not address the other. Pico , --- Wis. 2d ----, ¶ 20.
¶ 20 Here, we conclude Morgan has failed to demonstrate that his attorney's allegedly deficient conduct caused prejudice to his defense. To show prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington , 466 U.S. 668, 694 (1984).
¶ 21 In making the prejudice determination, we must consider the totality of the evidence before the jury. Id. at 695. A verdict only weakly supported by the evidence is more likely to have been affected by errors than one with overwhelming record support. Id. at 696. "Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court ... must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id.
¶ 22 Morgan primarily takes issue with two evidentiary presentations to the jury. First, he focuses on Jennifer's testimony about Albert's description of the sexual assaults. He specifically zeroes in on three pieces of information elicited during Jennifer's testimony: (1) that, during the assaults, Morgan said, "It's been a long time since I've touched or had felt hairy thighs like this"; (2) that Albert told Jennifer, "[M]om, I think this has happened before"; and (3) that Albert said, "[M]om, you don't know, but there's worse." Second, Morgan challenges the presentation of Albert's videotaped Child Advocacy Center interview to the jury. He argues that, in each instance, the evidence was highly prejudicial inadmissible hearsay to which his attorney should have objected.
¶ 23 We first evaluate the content and probative value of the challenged evidence to determine the degree to which it might have influenced the jury's verdict. Morgan claims Jennifer's testimony regarding the three specific statements Albert made were "improper and inadmissible 'other acts' evidence." True "other acts" evidence can be problematic because it invites the jury to focus on the character of the accused, which "magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged." State v. Sullivan , 216 Wis. 2d 768, 783, 576 N.W.2d 30 (1998). However, we disagree that the various statements at issue neatly fit within this category of evidence.
¶ 24 All three challenged hearsay statements testified to by Jennifer contained a high degree of ambiguity. One reasonable construction of the statements, taken in their totality, is that Albert was of the opinion that Morgan had committed a previous sexual assault of a child. Even in this worst-case scenario for Morgan, Albert's prefatory "I think" clearly signaled to the jury that a prior child sexual assault was only Albert's unproven supposition. There are also numerous reasonable interpretations of the statements that are fairly innocuous. In particular, given Morgan's statement that it had been a long time since he touched "hairy thighs," it is equally plausible that Albert was referring to homosexual conduct generally, as Morgan was married with a wife and children at the time of the offenses. Thus, we disagree with Morgan that the statements necessarily constituted an allegation of prior abuse that confused the issues and led the jury to convict Morgan because it believed he escaped punishment for another crime.
¶ 25 With respect to Albert's videotaped Child Advocacy Center interview, we agree with Morgan's assertion that "[v]ideotaped statements of children are powerful, persuasive evidence for the State." But a child's live trial testimony can also be powerful, persuasive evidence, especially if it withstands cross-examination. It is undisputed that the statements Albert gave during the interview were generally consistent with his live trial testimony, which was presented prior to the playing of the recording and was subject to cross-examination. Morgan does not challenge Albert's trial testimony in any manner, nor does he challenge the testimony of the nurse that examined Albert regarding what Albert told her about the sexual assaults. Thus, Albert's recorded statements, as well as his statements to his mother about what happened, were merely cumulative of other, properly admitted evidence.
¶ 26 Morgan relies on State v. Peters , 166 Wis. 2d 168, 479 N.W.2d 198 (Ct. App. 1991), to assert that he suffered prejudice as a result of the jury being presented with inadmissible hearsay evidence that "bolstered" Albert's credibility. In Peters , we reversed a child sexual assault conviction because the jury had heard inadmissible hearsay evidence from the victim's classmates that, years after the alleged assaults, the victim had revealed the crimes to them. Id. at 173. The investigating officer had also testified that the victim's in-court testimony regarding the sexual assaults was the same as her previous, out-of-court statements to him. Id. In Peters , defense counsel had objected to the foregoing evidence on hearsay grounds. Id. at 174. We concluded there was a "reasonable possibility"[6] that the defendant was prejudiced by the admission of the hearsay evidence, given the "specific nature of the inadmissible testimony, the number of inadmissible statements admitted, the implication that additional uncharged sexual assaults occurred, and the lack of other evidence corroborating the sexual assaults." Id. at 180.
¶ 27 Here, the considerations we found pertinent in Peters do not counsel in favor of a finding of prejudice. The defendant in Peters testified on his own behalf and denied all of the victim's allegations. Id. at 173. The lack of corroborating testimony from the victim's three classmates would have materially changed the evidence before the jury and may have increased the persuasiveness of the defendant's denials of the years-old offenses. The inadmissible hearsay here consisted of a brief recitation from Jennifer about what Albert had told her about the assaults, as well as statements Albert gave just days after the incident had occurred. As previously explained, the victim's out-of-court statements generally mirrored his in-person testimony at trial, and they did not include impermissible "other acts" evidence. While his out-of-court statements were cumulative to evidence properly admitted, we cannot conclude that Morgan has demonstrated the jury was inclined to believe Albert merely because it heard Albert's consistent version of events multiple times. Indeed, it had no other "version" to compare against Albert's testimony.
¶ 28 In this vein, other matters also inform our determination that there was not a reasonable probability of a different result had Morgan's attorney performed effectively. First, although Morgan correctly observes that the case hinged on Albert's credibility, Morgan did not offer any evidence that created a substantial question as to Albert's truthfulness or the credibility of his testimony. Morgan offered no motive for fabrication. Although Morgan did not testify, the statements he made to police during his interview were admitted into evidence. Morgan corroborated significant details of Albert's testimony, including that he was present at the family gathering, had been drinking, made "small talk" about homosexuality with Albert, stayed up late alone with Albert, and placed his hands on Albert's thighs. During the interview, Morgan did not directly deny that the assaults had occurred, instead expressing his "hope" that they did not and claiming he could not remember the assaults if they did occur. At one point during the interview, Morgan conceded it was "possible" that he touched Albert, but he added, "I don't remember doing that and oh my God if I did, um...."
¶ 29 Second, both Morgan's trial counsel and the circuit court recognized that Albert provided compelling testimony regarding the assaults. Significantly, during his police interview, Morgan also repeatedly vouched for the victim's credibility, agreeing Albert was a "very honest person," a "truthful kid," and that he "wouldn't make up a story." Given the persuasive nature of the victim's testimony combined with Morgan's own positive assessments of the victim's credibility, we cannot conclude that there is a reasonable probability of a different result had the jury not been exposed to the hearsay evidence.
¶ 30 Third and finally, the defense theory emphasizing the lack of DNA evidence was not necessarily damaged by the jury hearing Albert's version of events multiple times. Regardless of how many times the jury heard Albert's story, the lack of DNA or other physical evidence was unchanged. Moreover, Albert consistently described significant physical contact: Morgan touching Albert's clothing, fondling his genitals and other body parts, kissing him, and engaging in mouth-to-penis contact. The defense theory was not hampered by the jury hearing additional (albeit hearsay) evidence that physical contact occurred. Indeed, Morgan's defense strategy may have been aided by the victim's repeated assertions that various parts of his body had been touched, yet no physical evidence was presented at trial.
¶ 31 Morgan also asserts he is entitled to a new trial in the interest of justice. We may reverse in the interest of justice "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." WIS. STAT. § 752.35. Morgan contends a new trial is warranted under both prongs. He argues the real controversy was not fully tried because "the jury heard multiple prejudicial hearsay statements that should not have been admitted a trial." Morgan contends the hearsay evidence reinforced Albert's testimony and "improperly bolster[ed]" his credibility. Morgan argues his conviction was a miscarriage of justice for the same reasons.
¶ 32 We reserve our reversal authority under WIS. STAT. § 752.35 for "exceptional causes." See Vollmer v. Luety , 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990). Morgan's interest-of-justice arguments are merely a repackaging of his ineffective assistance of counsel claims. Our supreme court has made clear that "the Strickland test is the proper test to apply in the context of an ineffective assistance of counsel claim." State v. Mayo , 2007 WI 78, ¶ 60, 301 Wis. 2d 642, 734 N.W.2d 115. In any event, we would reject the merits of Morgan's interest-of-justice arguments. For the reasons set forth above, our review of the record demonstrates that the real controversy-i.e., whether Morgan committed the charged crimes-was fully tried. Additionally, we cannot conclude it is probable that justice has miscarried based on the erroneous admission of the challenged evidence.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Pursuant to the policy underlying Wis. Stat. Rule 809.86 (2015-16), we use pseudonyms for the victim and certain of his relatives.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

See Wis. Stat. §§ 948.02(2), 948.10(1).

Morgan filed an original and then an amended postconviction motion, as well as a supplemental postconviction motion. Only the supplemental motion is at issue in this appeal.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

By the time of the trial, Albert had turned sixteen years old. His recorded statements were therefore not admissible under Wis. Stat. § 908.08(3)(a)2., which requires that the trial or hearing commence before the child's sixteenth birthday for the recorded statements to be admissible. The circuit court also rejected the State's arguments that the recording was admissible as containing Albert's prior consistent or prior inconsistent statements. Finally, the court rejected the State's reliance on the "rule of completeness" set forth in State v. Sharp , 180 Wis. 2d 640, 511 N.W.2d 316 (Ct. App. 1993), as well as its reliance on the residual hearsay exception found in Wis. Stat. §§ 908.08(7) and 908.03(24).

The court's use of the term "possibility" in State v. Peters , 166 Wis. 2d 168, 479 N.W.2d 198 (Ct. App. 1991), highlights that it was not an ineffective assistance of counsel case, but rather one of direct review of a preserved evidentiary objection in which the State had the burden of establishing harmless error. Id. at 180 (citing the "reasonable possibility that the error contributed to the conviction standard" from State v. Dyess , 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985) ). For purposes of an ineffective assistance of counsel claim, a mere possibility of a different outcome is insufficient; there must be a "substantial, not just conceivable, likelihood of a different result." State v. Starks , 2013 WI 69, ¶ 55, 349 Wis. 2d 274, 833 N.W.2d 146.