COURT OF APPEALS
DECISION
DATED AND FILED

January 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1659-CR**

Cir. Ct. No. **2016CF3561**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

FREDERICK BERNARD LINDER, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID A. HANSHER, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Frederick Bernard Linder, Jr. appeals the judgment of conviction entered upon his guilty pleas to one count of second-degree reckless injury and one count of hit and run causing great bodily injury. He also appeals the order of the circuit court denying his motion to withdraw his guilty pleas. Linder argues that he received ineffective assistance of counsel when he pled guilty because trial counsel erroneously told Linder that he would face additional years of imprisonment for charges of witness intimidation and either solicitation or conspiracy to commit perjury. Linder further argues that he was prejudiced because he would not have pled guilty but for trial counsel's erroneous advice.

¶2 We conclude that Linder failed to show that he would not have pled guilty absent trial counsel's advice regarding any potential charges of witness intimidation and either solicitation or conspiracy to commit perjury. Therefore, Linder has not shown that he was prejudiced by any assumed deficiency in trial counsel's performance. Accordingly, Linder has not shown that he is entitled to withdraw his guilty pleas. Therefore, we affirm.

## BACKGROUND

¶3 Linder was charged with one count of second-degree reckless injury and one count of hit and run causing great bodily injury on August 11, 2016. The charges arose from a collision that occurred on July 28, 2016, at approximately 8:42 p.m., at the intersection of West North Avenue and North 17th Street in the City of Milwaukee. At the time of the collision, Linder was driving his father-in-law's SUV westbound on North Avenue at approximately fifty to sixty miles per hour, ran a red light, and struck a PT Cruiser that was entering the intersection with a green light. The PT Cruiser spun out of control and hit several parked cars, but instead of stopping to check on any occupants in the PT Cruiser, Linder pulled

over, searched the SUV to make sure there were no beer bottles inside, and fled the scene on foot. When police arrived, the driver of the PT Cruiser was extricated from the vehicle and rushed to the hospital with life threatening injuries. The next day, an anonymous 9-1-1 caller indicated that Linder was driving the SUV.

¶4     Around 11:30 p.m. the night of the collision, Linder's father-in-law reported that his SUV was stolen; however, when he was later questioned by police, Linder's father-in-law told them that Linder confessed to him that he was driving the SUV that night and that the SUV was not, in fact, stolen. He further indicated that he made a false report that his SUV was stolen to protect Linder.

¶5     In addition to Linder's father-in-law, W.D., a friend of Linder, originally provided an alibi for Linder by saying that Linder was at W.D.'s house the night of the crash. However, when he was questioned by police, W.D. told them that Linder was not at his house and that Linder had confessed to him that he was driving the SUV that night. Additionally, the police identified the anonymous 9-1-1 caller as W.D.'s daughter. She had allegedly called the police after overhearing a conversation between Linder and W.D., in which she heard Linder confess that he was driving the SUV. On May 30, 2017, trial counsel withdrew the notice of alibi that he had just filed on May 16, 2017, that reflected W.D.'s original statement.

¶6     At the time of the collision, Linder was on probation for a conviction for unrelated drug charges. Linder's probation officers also identified Linder as the driver of the SUV based on video surveillance footage of the intersection the night of the crash. The footage is in black and white and grainy, but it clearly shows the SUV traveling at a high rate of speed, running the red light, and striking

the PT Cruiser. After the crash, the footage shows the SUV pulling over, its driver and passenger exiting the car, the driver searching for something in the SUV, and then the driver walking away. Linder's probation officers were familiar with Linder's mannerisms and were able to identify Linder in this footage by the distinctive way Linder walked.

¶7 On the other hand, two witnesses provided a description of the driver of the SUV that arguably did not match Linder. One witness identified the driver of the SUV as a young male, about five-feet eight-inches tall, and with a thin build. Another witness identified the driver as a young male in his twenties, about five-feet six-inches tall, and with a thin build. Linder, who was roughly fifty-three years old at the time of the collision, is approximately six feet tall and 215 to 220 pounds. Linder's trial counsel attempted to subpoena these witnesses to have them testify at Linder's trial, but trial counsel was unable to locate at least one of these witnesses.

¶8 After the collision, Linder's probation was revoked, and he was returned to prison in January 2017. While in prison, Linder wrote two letters to W.D. that prompted the State to request an adjournment to consider additional charges for witness intimidation and either solicitation or conspiracy to commit perjury. In the letters, Linder tells W.D. how to testify. He also tells W.D. to have his daughter say that she misunderstood the conversation she overheard between Linder and W.D. The State also discovered that Linder's wife threatened to physically harm W.D.'s daughter if she testified about the conversation she overheard.

¶9 The State and Linder subsequently entered into a plea agreement in which Linder agreed to plead guilty to both of the counts that he was charged with.

In exchange for Linder's pleas to those charges, the State agreed to (1) recommend six to eight years of initial confinement followed by five years of extended supervision, (2) remain silent on whether Linder's sentence should be concurrent or consecutive to the sentence he was currently serving, and (3) not bring any additional charges for solicitation or conspiracy to commit perjury or witness intimidation. Linder pled guilty on July 7, 2017. The potential additional charges were to be read in at the time of sentencing.

¶10 Linder was sentenced on August 3, 2017.[1] After hearing from the State, the victim's father, trial counsel, and Linder himself, the circuit court rejected the State's recommendation because it did not adequately protect the community, did not adequately punish Linder, and did not adequately deter others. The circuit court sentenced Linder to a global sentence of twenty-three years of imprisonment, composed of fifteen years of initial confinement and eight years of extended supervision, to be served concurrent with the sentence Linder was already serving.[2]

¶11 On November 19, 2018, Linder, through postconviction counsel, filed a motion for postconviction relief in which he argued that he was entitled to

---

[1] The Honorable William S. Pocan presided over the proceedings until Linder's sentencing. The Honorable David A. Hansher presided over the proceedings beginning with Linder's sentencing hearing and rendered the decision and order that is the subject of Linder's appeal.

[2] Count one is a Class F felony carrying a maximum term of imprisonment of twelve and one-half years. WIS. STAT. §§ 939.50(3)(f), 940.23(2)(a) (2017-18). Count two is a Class E felony carrying a maximum term of imprisonment of fifteen years. WIS. STAT. §§ 346.67(1), 346.74(5)(c), 939.50(3)(e).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

withdraw his guilty pleas because his trial counsel rendered ineffective assistance in advising him to accept the plea agreement. The circuit court held a *Machner*[3] hearing on August 9, 2019.

¶12 At the hearing, trial counsel testified to his recollection of the considerations that bore on Linder's decision to accept the State's plea agreement. Specifically, trial counsel indicated that he was concerned about Linder's defense in light of the fact that Linder's alibi had to be withdrawn; that W.D. informed trial counsel that he would testify "in such a way that it would not be helpful" to Linder; that the additional witnesses could not be found; and that Linder's father-in-law would no longer testify in a way that would be favorable to Linder. He was also concerned that the letters Linder wrote to W.D. would support additional charges and expose Linder to additional years of imprisonment, if Linder did not accept the plea agreement.

¶13 In the end, trial counsel advised Linder to accept the plea agreement because "the case from the defense point of view wasn't as strong as we were hoping it was going to be. And if certain things came out at trial, they might actually cause []Linder to get a worse sentence." In particular, trial counsel was concerned that a trial might reveal that both Linder's father-in-law and W.D. committed perjury, at Linder's request, when they testified to their original

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

statements at Linder's revocation hearing.[4] Trial counsel testified that he "would say yes" to the fact that "there were multiple reasons, not just any uncharged read-in conduct" that ultimately led to Linder's decision to plead guilty.

¶14     Linder, on the other hand, testified that he wanted to take his case to trial because he believed the State had a weak case. He believed he had a good chance of winning at trial because the State lacked physical evidence to prove that he was driving the SUV. The SUV's airbag deployed during the crash, but the results of the DNA testing conducted on the airbag were inconclusive. He also believed that he could show that his father-in-law and W.D. were coerced by the police into changing their statements. Linder testified that he accepted the plea agreement because his trial counsel told him that he would be charged and convicted for witness intimidation and conspiracy to commit perjury, and would be facing additional years of imprisonment, if he did not accept the plea agreement. Linder testified that his trial counsel told him he would face an additional twenty years of imprisonment, including fifteen years of initial confinement. However, upon cross-examination, Linder admitted, "I don't remember how much time that I was facing at that particular time. All I knew is that the D.A. was trying to give me a plea deal for six to eight years. That's all that I was focused on."

---

[4] At Linder's revocation hearing, Linder's father-in-law testified consistent with his original report to the police that his SUV was stolen, but after the revocation hearing, he told police that it was not stolen and that Linder had actually confessed that he was driving the SUV at the time of the accident. W.D. also testified at Linder's revocation hearing that Linder was at his house at the time of the accident. However, W.D. subsequently told police that Linder was not at his house and that Linder confessed to him that he was driving the SUV at the time of the accident.

¶15    At the end of the hearing, the circuit court found that trial counsel's performance was deficient but that such performance did not prejudice Linder. As it applies to the prejudice prong of the analysis, the circuit court found that the results of the proceeding would not have been any different because "the case was sort of breaking down." The circuit court stated, "[T]here's no question in my mind that … the incorrect information provided to him was not the basis for his guilty plea. To sum up, the guilty plea was a result of his entire case falling apart." Thus, the circuit court denied Linder's motion, and this appeal followed.

## DISCUSSION

¶16    "A defendant is entitled to withdraw a guilty plea after sentencing only upon a showing of a 'manifest injustice' by clear and convincing evidence." *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). "[T]he 'manifest injustice' test is met if the defendant was denied the effective assistance of counsel." *Id.*

¶17    "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective: (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *Id.* In the context of an argument for plea withdrawal, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Id.***

¶18   "An ineffective assistance of counsel claim presents a mixed question of fact and law." ***State v. Pico***, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's findings of fact unless they are clearly erroneous." ***Id.*** We likewise uphold any "assessments of credibility and demeanor" by the circuit court unless they are clearly erroneous. ***State v. Carter***, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695. "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel." ***Pico***, 382 Wis. 2d 273, ¶13.

¶19   Linder argues that his trial counsel was deficient when trial counsel misinformed him that he would be charged and convicted of witness intimidation and either solicitation or conspiracy to commit perjury and, thus, he faced additional years of imprisonment if he did not accept the plea agreement. Linder also argues that, because he was fifty-four years old, the additional twenty years of imprisonment, which he believed included fifteen years of initial confinement, would have been a de facto life sentence for him.[5] Linder asserts that he would

---

[5] Witness intimidation is a Class G felony carrying a maximum sentence of ten years of imprisonment, composed of five years of initial confinement and five years of extended supervision. WIS. STAT. §§ 939.50(3)(g), 940.43, 973.01(2). Solicitation to commit perjury is a Class H felony carrying a maximum sentence of six years, composed of three years of initial confinement and three years of extended supervision. WIS. STAT. §§ 939.30(1), 946.31(1), 939.50(3)(h), 973.01(2). Based on trial counsel's testimony at the ***Machner*** hearing, the record reflects that trial counsel and the State never had any conversations regarding what the additional charges would have been. As the State argues, there was the possibility of at least three charges of witness intimidation. Linder also concedes that the State would have been able to charge him with two counts of solicitation to commit perjury. However, any additional time Linder would have faced is based on speculation of what the additional charges would have been following the State's investigation into the letters Linder wrote to W.D.

not have pled guilty but for trial counsel's erroneous advice that he would have faced additional years of imprisonment for charges of witness intimidation and either solicitation or conspiracy to commit perjury if he did not take the plea agreement.

¶20     Because we conclude that Linder was not prejudiced by any assumed deficiency in trial counsel's performance, we only address the second prong of the *Strickland*[6] analysis.  *See **State v. Johnson***, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990) ("[C]ourts may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice[.]").

¶21     Trial counsel testified at the ***Machner*** hearing that there were multiple considerations bearing on Linder's decision to plead guilty, including that Linder's defense seemed to be growing weaker by the day.  At the ***Machner*** hearing, the circuit court accepted this fact and found that "the guilty plea was a result of [Linder's] entire case falling apart."  Thus, we must accept the circuit court's factual finding that Linder's case was falling apart unless it is clearly erroneous.

¶22     Trial counsel testified that he filed a notice of alibi when he became aware of W.D.'s potential to serve as an alibi witness for Linder.  Shortly thereafter, though, trial counsel was provided with the letters from Linder to W.D.  Trial counsel testified that the letters prompted him to meet with W.D. in person to investigate exactly what was going on.  Trial counsel testified that W.D. told him

---

[6]  ***Strickland v. Washington***, 466 U.S. 668 (1984).

at this meeting that W.D. would no longer testify in a way that was favorable to Linder. As a result of the meeting, trial counsel became concerned that W.D. previously provided false testimony at Linder's revocation hearing when W.D. testified that Linder was at his house the night of the collision. The meeting further prompted trial counsel to withdraw the notice of alibi and become concerned that any further facts that came to light regarding any communications between Linder and W.D. could make the situation worse for Linder in the end.

¶23 Trial counsel testified that he was similarly concerned about the changing statements provided by Linder's father-in-law. Additionally, he testified that he was unable, even with the help of a private investigator, to locate the witnesses that could potentially provide an alternate description of the driver of the SUV. Overall, trial counsel testified that Linder's defense was falling apart.

¶24 By contrast, Linder testified that he had a strong case because the State lacked physical evidence to place him in the SUV. He testified that he would be able to show that W.D. and his father-in-law were coerced by police into changing their statements. He further testified that the inconclusive results of the DNA testing done on the airbag showed that he could not be physically placed at the scene. He also testified that no one would believe that his probation officers could identify him from the surveillance footage based on the quality of the footage and the short period of time his probation officers knew him.

¶25 After hearing the testimony and assessing the credibility and demeanor of trial counsel and Linder, the circuit court found that Linder had lost crucial testimony from W.D. and Linder's father-in-law and used these facts to further find that Linder's case was falling apart. The circuit court then found, "[T]here's no question in my mind that … the incorrect information provided to

11

[Linder] was not the basis for his guilty plea. To sum up, the guilty plea was a result of his entire case falling apart." In making this finding, the circuit court was implicitly finding that Linder's testimony at the *Machner* hearing was incredible. Moreover, Linder was facing a total of twenty-seven and one-half years for the two charges in this case and, as he testified at the *Machner* hearing, he was focused on the State's promise to recommend a reduced sentence of only six to eight years of initial confinement on those existing charges.

¶26 Based on the testimony introduced at the *Machner* hearing describing the issues trial counsel encountered with Linder's defense, we conclude that the circuit court's factual findings were not clearly erroneous. Therefore, we accept them as true.

¶27 Based on the circuit court's factual findings, we conclude that there is no reasonable probability that Linder would have forgone entering guilty pleas and instead have insisted on going to trial when his defense was falling apart at the seams. As the Supreme Court of the United States has said:

> A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.… [D]efendants obviously weigh their prospects at trial in deciding whether to accept a plea. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the [State] offers one.

*Lee v. United States*, 137 S. Ct. 1958, 1966 (2017) (citation omitted). Linder chose to accept a plea that he believed would offer him a better resolution than would have been likely after trial given the strength of the State's case and the weakness of his own.

12

¶28    Linder argues that, similar to *State v. Dillard*, 2014 WI 123, 358 Wis. 2d 543, 859 N.W.2d 44, he was misinformed throughout the entire proceedings that he would face a de facto life sentence if he went to trial and should, therefore, be allowed to withdraw his pleas.  We disagree.

¶29    In *Dillard*, the defendant's criminal charges included a persistent repeater enhancer that carried a mandatory life sentence without the possibility of extended supervision.  *Id.*, ¶¶16-17.  As a result of plea negotiations, the State agreed to drop the penalty enhancer if the defendant pled guilty.  *Id.*, ¶19.  The defendant pled guilty and discovered after his sentencing that the penalty enhancer was a legal impossibility because it was undisputed that he did not meet the criteria for the enhancer.  *Id.*, ¶6.  Our supreme court allowed the defendant to withdraw his plea because it concluded that there was a reasonable probability that the defendant would have taken his chances at trial if he had been correctly advised that the penalty enhancer could not apply to him.  *Id.*, ¶104.

¶30    In reaching its decision, our supreme court acknowledged that the State admitted that it had a weak case against the defendant and the testimony from the *Machner* hearing showed that both trial counsel and the defendant agreed that the penalty enhancer was the main motivator for the defendant to accept the plea agreement.  *Id.*, ¶¶101-02.  The court further stated that the State's promise to drop the penalty enhancer was "a substantial inducement to the defendant to accept the plea agreement."  *Id.*, ¶101.

¶31    That is not the case here.  The record does not support Linder's argument that the main motivating factor behind Linder's guilty pleas were the fact that he could avoid any additional charges.  The first fact that distinguishes this case from *Dillard* is that the State asserts that it had a strong case against

Linder. We agree. Linder's father-in-law, W.D., and W.D.'s daughter all told police that Linder confessed to driving the SUV at the time of the accident. Linder also sent letters to W.D., telling him how to testify. He also told W.D. to have his daughter say that she misunderstood the conversation between Linder and W.D. when she said that Linder confessed to driving the SUV at the time of the accident. Linder's probation officers also identified Linder as the driver of the SUV from the surveillance video. Moreover, as noted below, trial counsel testified at the *Machner* hearing that the defense case was falling apart.

¶32     The second fact distinguishing this case from *Dillard* is that trial counsel's recollection of the discussions leading up to Linder's guilty pleas were not consistent with Linder's recollection of the discussions. Trial counsel testified that the likelihood of success at trial with Linder's deteriorating defense was at least a motivating factor, if not *the* motivating factor, because trial counsel and Linder discussed the strengths and weaknesses of the case when the two discussed the plea agreement. As noted above, trial counsel testified that he "would say yes" to the fact that "there were multiple reasons, not just any uncharged read-in conduct" that ultimately led to Linder's decision to plead guilty. Further, Linder's own testimony on cross-examination shows that he was motivated by something other than the State's promise to forgo additional charges when he testified that he was focused on the State's promise to recommend a reduced sentence of only six to eight years of initial confinement on his existing charges.

¶33     We agree with the circuit court that Linder did not plead guilty because trial counsel told him that if he did not plead he would be facing additional years in prison for additional charges. Thus, we reject Linder's argument that *Dillard* requires us to conclude that Linder is entitled to withdraw his pleas.

**CONCLUSION**

¶34    In sum, we conclude that Linder has not shown that he would have insisted on going to trial instead of pleading guilty but for trial counsel's advice that Linder faced additional years of imprisonment by not accepting the plea agreement because Linder could be charged and convicted of witness intimidation and either solicitation or conspiracy to commit perjury.  Therefore, Linder has not met his burden to show that he was prejudiced by any assumed deficiency in trial counsel's performance such that Linder has met his burden to show that he is entitled to withdraw his guilty pleas.  Accordingly, we affirm the circuit court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.