COURT OF APPEALS
DECISION
DATED AND FILED

March 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP66-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF4592**

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

 V.

REGGIE RAMONT GASTON,

 DEFENDANT-APPELLANT.

 APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

 Before Dugan, Graham and Donald, JJ.

 **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Reggie Ramont Gaston appeals his judgment of conviction and the order of the circuit court denying his motion requesting plea withdrawal or, in the alternative, resentencing. Gaston argues that his trial counsel misinformed him of the recommendation the State agreed to make if Gaston pled guilty, erroneously promised him that he would receive a twelve to fourteen year term of initial confinement if he pled guilty, and coerced and pressured him to plead guilty. He further argues that his trial counsel failed to object to the State's misrepresentation at the sentencing hearing that the victim entered the intersection with a green light and, as a result, he was sentenced based on inaccurate information. For the reasons set forth below, we affirm.

## BACKGROUND

¶2 In a criminal complaint dated October 5, 2017, Gaston was charged with two counts of second-degree reckless homicide and one count of second-degree reckless injury, all as a repeat offender, as a result of a hit-and-run accident that occurred on October 2, 2017, at North 35th Street and West Capitol Drive. The amended information later added ten additional counts.[1]

¶3 As alleged in the criminal complaint, an SUV, driven by Gaston, ran a red light and hit a sedan that was entering the intersection.[2] The SUV was

---

[1] The additional counts included two counts of hit and run resulting in death, one count of hit and run resulting in great bodily harm, two counts of knowingly operating a motor vehicle while suspended causing death, one count of knowingly operating a motor vehicle while suspended causing great bodily harm, one count of possession with intent to deliver cocaine, two counts of homicide by intoxicated use of a vehicle, and one count of injury by intoxicated use of a vehicle.

[2] There is some dispute as to whether the sedan entered the intersection on a green, yellow, or red light; however, the footage from the bus cameras shows that the sedan may have had a yellow light.

traveling at approximately seventy-eight miles per hour and hit the sedan with such force that the sedan was thrown into the side of a Milwaukee County Transit System bus that was waiting at the intersection. The sedan left a hole in the side of the bus and came to rest in the median. The sedan was completely destroyed, and two of the passengers, the driver and her infant daughter, were pronounced dead at the scene. The third passenger, a fifteen-year-old girl, was found lying unconscious near the sedan and taken to the hospital with severe injuries. Video footage from the cameras on the bus show the driver of the SUV exiting the vehicle and then leaving the scene in another vehicle that pulled over to pick him up.

¶4    The criminal complaint further alleged that police who arrived at the scene discovered sandwich bags containing crack cocaine in the SUV, blood outside the driver's side door of the SUV, and one men's white athletic shoe. While still processing the scene of the accident, police were alerted that a male individual had arrived at a nearby hospital for treatment of a fractured ankle and was missing one of his white athletic shoes. Police apprehended Gaston at the hospital and noticed that Gaston had glassy, bloodshot eyes with dilated pupils, consistent with the appearance of someone under the influence of drugs or alcohol.

¶5    Pursuant to a plea agreement with the State, Gaston pled guilty to the three original charges as stated in the criminal complaint, including the penalty enhancers, with the ten additional counts to be dismissed and read in at sentencing. The sentence recommendation to be made by the State pursuant to the terms of the plea agreement was not placed on the record at the time Gaston entered his pleas, and Gaston was not asked about his understanding of the terms of the plea agreement. He did, however, complete a standard plea questionnaire and waiver of rights form that stated that the State would recommend "[s]ubstantial prison

with the amount left to the discretion of the court." An email exchange between trial counsel and the State during plea negotiations also indicated that the State would be "free to argue" at the sentencing hearing regarding the appropriate sentence for Gaston.

¶6 At the sentencing hearing, the State recommended thirty years of initial confinement, with the amount of extended supervision left to the court's discretion. Gaston's trial counsel recommended ten to twelve years of initial confinement. Ultimately, the circuit court sentenced Gaston to thirty years of initial confinement and seventeen years of extended supervision, for a total term of imprisonment of forty-seven years.[3]

¶7 On July 31, 2019, Gaston filed a motion for postconviction relief requesting to withdraw his guilty pleas or, in the alternative, resentencing. The circuit court found that the factual issues surrounding the terms of the plea agreement and possible coercion by trial counsel needed to be explored at an evidentiary hearing and accordingly set Gaston's claim for plea withdrawal based on coercion by trial counsel for a hearing. However, the circuit court denied a hearing to address Gaston's claims for ineffective assistance of counsel. In short, it found that Gaston failed to properly allege that he would have proceeded to take

---

[3] Gaston faced a total of eighty years and six months of imprisonment, including fifty-five years and six months of initial confinement, on the charges as stated in the criminal complaint. *See* WIS. STAT. §§ 940.06(1), 940.23(2)(a), 939.50(3), 939.62(1)(c), 973.01(2), (2019-20). The additional ten charges included in the amended information, but dismissed as a result of the plea deal, would have added an additional 155 years and 6 months of imprisonment to bring the potential sentence to a total of 236 years of imprisonment if the sentences would run consecutively.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

4

his case on all thirteen counts to trial had his trial counsel properly informed him that the State was "free to argue" at sentencing and had not promised Gaston would receive only twelve to fourteen years of initial confinement. The circuit court similarly denied a hearing to address Gaston's claim that he was sentenced based on inaccurate information because the circuit court found that the victim's conduct was "totally irrelevant" and had the circuit court been presented with the police reports indicating that the victim entered the intersection with a yellow light it "would not have altered the court's view."

¶8 Trial counsel and Gaston testified at the evidentiary hearing that was held on December 20, 2019. Trial counsel testified that the State made a "free to argue" offer and that he incorrectly indicated in the plea questionnaire that the State's offer was "substantial prison." In regards to what he discussed with Gaston, trial counsel testified that he discussed the "free to argue" offer with Gaston, and trial counsel remembered that he exchanged emails with the State, including the "free to argue" offer, during the meeting he had with Gaston during which trial counsel and Gaston discussed the plea offer. Trial counsel further testified that he never made any promises to Gaston about the sentence Gaston would receive, nor did he threaten Gaston to enter a plea. Instead, trial counsel testified that he discussed with Gaston that he would recommend an "amount[] of time" in the "range of 12 to 14 years" and that Gaston "didn't really want to go to trial" and "[h]e wanted a better deal."

¶9 By contrast, Gaston testified that trial counsel pressured him into pleading guilty and refused to prepare a defense if Gaston wanted to go to trial. Gaston testified that his meetings with counsel were often hostile, that counsel would raise his voice at Gaston, and during one of their last meetings in which they discussed the State's plea offer, trial counsel even threw a chair. Gaston

further testified that trial counsel assured him that he would receive thirty to forty years if he went to trial and only twelve to fourteen years if he pled guilty.

¶10 The circuit court found "there were no promises that were made that would have led to any type of coercion. There w[ere] no guarantees that were made based upon what was stated here on the record. And certainly no threats that were made." Consequently, the circuit court denied Gaston's motion, and this appeal follows.

## DISCUSSION

¶11 Gaston argues that he is entitled to withdraw his guilty pleas because he received ineffective assistance of counsel and his pleas were not knowingly, intelligently, and voluntarily entered. He further argues, in the alternative, that he is entitled to resentencing because his trial counsel was ineffective for failing to object to inaccurate information presented by the State at the sentencing hearing. We address each of Gaston's arguments in turn.[4]

### I. Plea Withdrawal Based on Ineffective Assistance of Counsel

¶12 "A defendant is entitled to withdraw a guilty plea after sentencing only upon a showing of 'manifest injustice' by clear and convincing evidence." *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). "[T]he 'manifest

---

[4] Gaston also states that trial counsel failed to object to the State's recommendation of a thirty-year term of initial confinement as a breach of the plea agreement. To the extent Gaston is raising any argument that the State breached the terms of the plea agreement, we reject this argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

injustice' test is met if the defendant was denied the effective assistance of counsel." *Id.*

¶13    A defendant must show two elements to establish that he or she was denied the effective assistance of counsel:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense. *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334.  In the context of an argument for plea withdrawal, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  In so doing, the defendant must present more than a "bare allegation that he would have pleaded differently and gone to trial."  *State v. Dillard*, 2014 WI 123, ¶99, 358 Wis. 2d 543, 859 N.W.2d 44.

¶14    "An ineffective assistance of counsel claim presents a mixed question of fact and law."  *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.  "We will not reverse the circuit court's findings of fact unless they are clearly erroneous."  *Id.*  We likewise uphold any credibility assessments by the circuit court unless they are clearly erroneous.  *State v. Carter*, 2010 WI 40, ¶19, 324 Wis. 2d 640, 782 N.W.2d 695.  "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel."  *Pico*, 382 Wis. 2d 273, ¶13.

¶15    Gaston raises two main arguments why his trial counsel was ineffective:  (1) trial counsel was ineffective because he misinformed Gaston that the State would recommend "substantial prison" in exchange for Gaston's guilty

7

pleas, and (2) trial counsel was ineffective when he promised Gaston a sentence of twelve to fourteen years of initial confinement if Gaston pled guilty. We reject both arguments.

¶16 As it applies to both of Gaston's arguments, we agree with the circuit court that Gaston has failed to assert more than a bare allegation that he would have gone to trial had trial counsel informed him of the State's "free to argue" offer and not promised a twelve to fourteen year term of initial confinement and, therefore, we conclude that the circuit court properly denied Gaston's postconviction motion on these grounds. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433 (stating that a circuit court may deny a postconviction motion if it presents conclusory allegations).

¶17 In his affidavit attached to his postconviction motion, Gaston avers, "I was never told that the State would recommend thirty years of initial confinement. Had I known that this would be the State's recommendation I would have taken the matter to trial instead of entering guilty pleas." After listing all trial counsel's alleged deficiencies, he further avers, "I would have taken the matter to trial." At no point in the postconviction motion did Gaston expand on this statement, explaining why he would have risked a trial on all thirteen charges and exposed himself to a total maximum sentence of 236 years of imprisonment, instead of accepting the State's offer to dismiss ten of those thirteen charges, pleading guilty to the three original charges, and having the State recommend a

8

thirty-year term of initial confinement with the amount of extended supervision left to the circuit court's discretion.[5]

¶18 With only this bare bones statement in his affidavit, Gaston utterly fails to provide the required "objective factual assertions about his subjective decision" that he would have gone to trial, and he lacks a basic explanation as to why he would have forgone entering pleas and taken his chances at a trial where he faced significantly more charges and significantly more imprisonment. *See State v. Jeninga*, 2019 WI App 14, ¶¶10, 17-18, 386 Wis. 2d 336, 925 N.W.2d 574. We cannot assume that a trial would have been the only rational option had trial counsel informed Gaston that the State's offer was that it would be "free to argue" at sentencing or had trial counsel not made the alleged promise of twelve to fourteen years, and we must be provided with more than a conclusory statement that he would have insisted on a trial. *See id.*, ¶¶14, 23.[6] The State had a strong

---

[5] Gaston argued in his postconviction motion that he was unaware that the State would recommend thirty years of initial confinement. Even though the evidentiary hearing later showed that the State's actual offer was "free to argue," Gaston nevertheless needed to provide an explanation for his allegation in his motion as it relates to his assertion that he would have gone to trial had he been informed that the State would recommend thirty years of initial confinement when he faced a total of fifty-five years and six months of initial confinement for the charges to which he pled guilty.

[6] We further note that Gaston's claims for plea withdrawal based on ineffective assistance of counsel are internally inconsistent. If Gaston truly believed trial counsel's alleged promise that he would receive twelve to fourteen years of initial confinement, the State's offer would have been irrelevant whether it was to recommend "substantial prison," whether the State was "free to argue," or whether the State would recommend thirty years of initial confinement. Gaston, therefore, undermines his own argument that he would have insisted on a trial if trial counsel had informed him of the State's actual offer of "free to argue." Additionally, Gaston argues that his trial counsel never informed him that the State would recommend thirty years. However, trial counsel could not have been aware that the State would recommend thirty years if the actual offer was "free to argue," and further, if Gaston believed the State would recommend "substantial prison," a recommendation of thirty years of initial confinement could be considered consistent with substantial prison. We further reject Gaston's arguments for these reasons.

case against Gaston based on, among other things, the blood recovered from the scene of the accident, the footage from the bus camera, and the shoe found in the SUV, which matched the shoe Gaston was wearing when he was apprehended at the hospital. *See **Lee v. United States***, 582 U.S. ___, 137 S. Ct. 1958, 1966 (2017) ("[D]efendants obviously weigh their prospects at trial in deciding whether to accept a plea.").

¶19    Turning specifically to Gaston's argument regarding trial counsel's alleged promise, we further conclude that Gaston's claim fails because the circuit court found that trial counsel made no such promise of a twelve to fourteen year term of initial confinement and, therefore, trial counsel cannot be considered deficient for making a non-existent promise. Following the evidentiary hearing, the circuit court found that "there were no promises that were made." We are bound to uphold this as a factual finding unless it is clearly erroneous, and based upon a review of the record, we conclude that the circuit court did not erroneously exercise its discretion in making this finding. *See **Pico***, 382 Wis. 2d 273, ¶13.

¶20    In response to a question asking whether trial counsel promised Gaston a particular sentence, trial counsel testified, "No. I never do that, ever. I can't do that." Trial counsel further testified that he told Gaston, "I can't force the judge to agree to anything," and that he would "[a]bsolutely not" guarantee a sentence because "[he] can't give that guarantee." Trial counsel testified that "[t]here is no guarantee" and to promise a particular sentence was "not legal" and "not ethical." Rather, as trial counsel explained in his testimony, he discussed with Gaston that he would recommend an "amount[] of time" in the "range of 12 to 14 years." When Gaston testified to the contrary, the circuit court credited trial counsel's testimony, and we will not second-guess the circuit court's credibility

determination and overturn its finding that trial counsel made no such promise of twelve to fourteen years to Gaston. *See Carter*, 324 Wis. 2d 640, ¶19.

¶21 Thus, we reject Gaston's claim that he is entitled to plea withdrawal because he received ineffective assistance of counsel. Gaston has failed to put forth any explanation as to why he would have proceeded to trial had trial counsel informed him that the State's offer was "free to argue" and not promised him twelve to fourteen years of initial confinement. Additionally, Gaston fails to demonstrate that the circuit court's finding that no such promise was made by trial counsel was clearly erroneous.

## II.    Plea Withdrawal Based on Coercion

¶22 In addition to ineffective assistance of counsel, "[a] defendant may show manifest injustice by proving 'that his plea was not entered knowingly, intelligently, and voluntarily.'" *State v. Pegeese*, 2019 WI 60, ¶15, 387 Wis. 2d 119, 928 N.W.2d 590 (citation omitted). "Whether a defendant entered his plea knowingly, intelligently, and voluntarily is a question of constitutional fact that this court reviews de novo." *Id.*, ¶16. We again accept "the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous." *Id.* (citation omitted).

¶23 Gaston argues that his trial counsel coerced and pressured him into entering his guilty pleas and, therefore, his pleas were not knowingly, voluntarily, or intelligently entered. Gaston alleges that his trial counsel coerced him by yelling at him, "cussing" at him, and throwing a chair. Gaston also alleges that his trial counsel coerced him by promising him that he would receive a sentence of twelve to fourteen years of initial confinement and misinforming him of the State's offer. We again reject Gaston's arguments.

11

¶24 In this case, the circuit court explicitly found that there were no threats, no promises, and no guarantees. Both trial counsel and Gaston testified regarding their discussions leading up to Gaston's guilty pleas, and both trial counsel and Gaston reference that those discussions were sometimes hostile. However, trial counsel denied Gaston's allegations that he "cussed" at Gaston, yelled at him, and threw a chair in order to pressure Gaston to plead. Trial counsel also denied that he refused to present a defense for Gaston, if Gaston intended to proceed to trial. Instead, trial counsel recounts that he was candid with Gaston that the State had a strong case and that the focus should be on obtaining Gaston the best sentence possible, which in trial counsel's estimation required Gaston to plead guilty.

¶25 With this record before us, the circuit court's findings that there were no threats, no promises, and no guarantees are not clearly erroneous. Consequently, Gaston's claim that trial counsel coerced him to plead by making threats, promises, and guarantees fails, and the circuit court properly denied Gaston's motion for plea withdrawal.

### III. Resentencing Based on the Presentation of Inaccurate Information by the State at Sentencing

¶26 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. To be entitled to resentencing, a defendant must show that inaccurate information was presented to the circuit court at the time of sentencing and that the circuit court actually relied on the inaccurate information in imposing the defendant's sentence. *Id.*, ¶2. Whether trial counsel is ineffective for failing to object to inaccurate information presented at sentencing is a mixed question of law and fact wherein we uphold the circuit court's factual findings

unless they are clearly erroneous but determine independently whether those facts amount to ineffective assistance of counsel. *State v. Alexander*, 2015 WI 6, ¶15, 360 Wis. 2d 292, 858 N.W.2d 662.

¶27    Gaston argues that his trial counsel was ineffective when he failed to object to the State's inaccurate representation during the sentencing hearing that the victim entered the intersection with a green light. Gaston further argues that he is entitled to resentencing because the circuit court relied on this information to place blame for the accident squarely on his shoulders, with none of the blame being placed on the victim for her attempt to speed through a yellow light. He contends that had his trial counsel objected to the State's representation and the circuit court was presented with accurate information, he would have received a lesser sentence.

¶28    Even assuming, without deciding, that the State presented inaccurate information when it stated that the victim entered the intersection with a green light, it is clear that the circuit court did not rely on that information at sentencing and, therefore, trial counsel is not ineffective for failing to object to the State's statement. *See id.*, ¶2. Gaston fails to identify any remarks from the circuit court at sentencing indicating that the circuit court relied on this information when it imposed Gaston's sentence. *See Tiepelman*, 291 Wis. 2d 179, ¶29 (concluding that the circuit court's references to the inaccurate information at the time of sentencing showed that the court relied on it). In denying Gaston's postconviction motion, the circuit court stated that had it been presented with what Gaston contends is the accurate information, it would not have altered the circuit court's view of the facts of the case or affected the sentence the circuit court imposed. "In cases concluding that the circuit court actually relied on inaccurate information or improper factors, the circuit court explicitly considered the inaccurate information

and also would not have sentenced the defendant in the same manner without the inaccurate information." *Alexander*, 360 Wis. 2d 292, ¶27. We have neither here, and therefore, the record does not show that the circuit court relied on the inaccurate information.

¶29 In this context where Gaston argues trial counsel was ineffective for failing to object to inaccurate information, "proof of prejudice is intertwined with whether the circuit court actually relied on" the inaccurate information. *Id.*, ¶38. Accordingly, without being able to show that the circuit court relied on the State's representation that the victim had a green light, Gaston's claim that he is entitled to resentencing for trial counsel's failure to object fails. *See id.*, ¶¶2, 38-40 (concluding that no prejudice existed when the defendant could not show that the circuit court relied on the inaccurate information).

## CONCLUSION

¶30 In sum, we conclude that the circuit court properly denied Gaston's postconviction motion requesting plea withdrawal and resentencing, and we affirm. Gaston presented conclusory allegations and failed to meet his burden to explain why he would have proceeded to trial had trial counsel informed Gaston of the State's "free to argue" offer and had trial counsel not promised Gaston twelve to fourteen years of initial confinement. Gaston has also failed to show that the circuit court's findings that trial counsel made no promises, threats, or guarantees to him were clearly erroneous. Last, the record does not demonstrate that the circuit court relied on any allegedly inaccurate information presented by the State during the sentencing hearing, and trial counsel cannot be considered ineffective for failing to object to information that had no bearing on Gaston's sentence.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.