COURT OF APPEALS
DECISION
DATED AND FILED

October 31, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2022AP187-CR
2022AP188-CR
STATE OF WISCONSIN**

Cir. Ct. Nos. 2021CM1807
2021CM3452

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHELE M. FORD,

DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: JACK L. DAVILA, Judge. *Reversed and remanded for further proceedings*.

¶1 DUGAN, J.[1] Michele M. Ford appeals from orders of the circuit court finding that she was incompetent to proceed in the criminal cases filed

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

against her. On appeal, Ford argues that she received ineffective assistance of counsel when trial counsel participated in a competency evaluation and spoke to the evaluator about counsel's impressions of Ford's mental state. Upon review, this court agrees, and therefore, this court reverses the circuit court's order and remands this matter for further proceedings as described below.

## BACKGROUND

¶2      Ford was arrested on May 21, 2021, and on June 29, 2021, she was charged with disorderly conduct, with use of a dangerous weapon, for a disturbance at her apartment complex during which multiple witnesses stated that Ford stole a package, began yelling profanities, threw a potted plant, and threatened to kill another tenant with a knife. As further alleged in the criminal complaint, when police arrived at the scene, they attempted to make contact with Ford. When Ford refused to allow the police to enter, they forced their way into her apartment, the police Tazed Ford, and then they took Ford into custody upon observing Ford standing in the entry with a large black knife and appearing to have blood covering her face.

¶3      Ford failed to appear at her originally scheduled initial appearance on July 27, 2021; however, after she was returned on an arrest warrant, Ford made her second scheduled initial appearance on August 4, 2021.

¶4      At a hearing held on August 26, 2021, the State raised the issue of Ford's competency, and the circuit court ordered that Ford be evaluated to determine whether she was competent for purposes of continuing with the criminal proceedings.

¶5      After Ford missed two scheduled appointments for the evaluation and another court appearance, she was arrested again and charged on October 9, 2021, with bail jumping. Ford then remained in custody for additional court appearances that month, as well as her initial competency evaluation.

¶6      In the initial competency evaluation dated October 21, 2021, the evaluator stated that he was "unable to provide the court with an opinion to a reasonable degree of medical certainty at this time" and "recommend[ed] the court remand Ms. Ford for an inpatient assessment of her competency." Pursuant to a subsequent court order for an inpatient evaluation, Ford was sent to Mendota Mental Health Institute and evaluated again in November 2021. At this time, the evaluator concluded that Ford lacked substantial mental capacity to understand the proceedings and assist in her own defense, but was likely to be restored to competency within the statutory period. At a hearing held on November 11, 2021, the circuit court found Ford incompetent based on the report and ordered inpatient treatment at Mendota. In its oral ruling, the circuit court specifically highlighted the portion of the report indicating that Ford would struggle to work collaboratively with trial counsel and assist in developing a legal strategy to resolve her criminal charges. A written order to that effect was entered on November 12, 2021.

¶7      Following treatment, Ford was later found competent at a hearing held on January 31, 2022, and the proceedings were reinstated. On February 7, 2022, Ford filed a notice of appeal of the circuit court's order finding her incompetent.

¶8      Since the time Ford filed her notice of appeal, Ford failed to appear for another court date, and her competency was revisited. At a hearing on

3

August 19, 2022, the proceedings were again suspended following a finding that Ford was incompetent to proceed. The proceedings remained suspended until the circuit court ordered the proceedings to be administratively closed as a result of the passing of the maximum penalty time.[2]

## DISCUSSION

¶9      On appeal, Ford argues that trial counsel was ineffective when she participated in the evaluation and provided a statement to the evaluator about Ford's competency. In response, the State raises several arguments that this court need not reach the issue of ineffective assistance of counsel, including that the notice of appeal was not timely filed and that this appeal is moot.

### I.      Timeliness of the Notice of Appeal

¶10      The State argues that the notice of appeal was not filed within the deadline set by WIS. STAT. § 808.04(1). More specifically, the State argues that the forty-five day deadline found in § 808.04(1) applies to Ford's case because of the notice generated by the electronic filing system for the circuit court's written order entered on November 12, 2021, and the presence of Ford's attorneys at the hearing at which the oral incompetency ruling was rendered. Thus, the State argues that the deadline for Ford to file her notice of appeal was December 27,

---

[2] This court notes that these facts are not contained in the record, as they occurred after Ford filed her notice of appeal. Rather, the State asks that this court take judicial notice of these facts as they are reflected on CCAP. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (recognizing that CCAP, an acronym of Wisconsin's Consolidated Court Automation Programs, reflects information entered by court staff of which the court may take judicial notice).

2021, and Ford's notice of appeal was late when it was filed on February 7, 2022. This court disagrees.

¶11     Pursuant to WIS. STAT. § 808.04(1),

> [a]n appeal to the court of appeals must be initiated within 45 days of entry of a final judgment or order appealed from if written notice of the entry of a final judgment or order is given within 21 days of the final judgment or order as provided in s. 806.06(5), or within 90 days of entry if notice is not given, except as provided in this section or otherwise expressly provided by law.

In this case, the final judgment or order appealed from is the circuit court's written order dated November 12, 2021, finding Ford incompetent to proceed with the criminal charges against her. Thus, the question becomes whether "written notice" of the November 21, 2021 order was given such that the forty-five day deadline to file the notice of appeal applies to Ford's case.

¶12     The State argues that written notice was provided because of the notice of activity that was generated by the electronic filing system when the circuit court entered the November 12, 2021 written order and the presence of Ford's attorneys at the hearing on November 11, 2021, at which the circuit court made its oral ruling. The notice of activity from the electronic filing system and the presence of Ford's attorneys at the hearing, however, does not constitute the written notice contemplated by WIS. STAT. § 808.04(1).[3]  *See* WIS. STAT. § 806.06(3) ("After an order or judgment is entered, either party may serve upon the other a written notice of entry containing the date of entry."); ***Soquet v.***

---

[3] Indeed, as Ford argues, if the notice of activity generated by the electronic filing system constituted written notice, the forty-five day deadline would always apply because the notice of activity is always generated from the electronic filing system.

5

*Soquet*, 117 Wis. 2d 553, 554, 345 N.W.2d 401 (1984) ("[T]he period for filing an appeal is shortened to forty-five days only if there has been a timely filing of a formal notice of entry of judgment"). Rather, to trigger the forty-five day deadline, "a formal, captioned and signed notice of entry of judgment stating the date the judgment was entered must be served on the opposing party within twenty-one days of the entry date." *Soquet*, 117 Wis. 2d at 561.

¶13     Thus, in the absence of the requisite written notice served on Ford by the State, this court concludes that the ninety day deadline to file an appeal applies to Ford's case, and Ford's filing her notice of appeal on February 7, 2022, was timely.

## II.     Mootness

¶14     The State additionally argues that Ford's case is moot because Ford was treated to competency since the time of the November 12, 2021 order underlying her appeal and the underlying criminal cases have been administratively closed. Thus, the State argues that Ford's requested relief "to reverse the finding of incompetency" has already been granted and a decision in this case will have no force, meaning, or impact on the underlying controversy.

¶15     In response, Ford cites to *Sauk County v. S.A.M.*, 2022 WI 46, 402 Wis. 2d 379, 975 N.W.2d 162, and argues that her case is not moot because her liability for the cost of her care during her commitment is a collateral consequence that precludes the State's mootness argument. This court agrees with Ford.

¶16     "An issue is moot when its resolution will have no practical effect on the underlying controversy." *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (citation omitted). "Appellate courts generally

decline to reach moot issues[.]" *Id.*, ¶12. If an appeal raises moot issues, it should be dismissed. *Id.* Whether an appeal is moot is a question of law that this court reviews *de novo*. *S.A.M.*, 402 Wis. 2d 379, ¶17.

¶17 In *S.A.M.*, our supreme court addressed the mootness of an expired recommitment order and stated, "[W]e hold that at least two such consequences render an appeal of an expired recommitment order not moot: (1) the restriction of one's constitutional right to bear arms; and (2) the liability for the cost of one's care." *Id.*, ¶¶2-3. The court continued that the expired recommitment order was not moot because both situations were presented. *Id.*, ¶3.

¶18 This court concludes that Ford's case is analogous to the situation presented in *S.A.M.* because Ford similarly raises the issue of the liability for the cost of her care during commitment as a collateral consequence of the circuit court's November 12, 2021 order. *See* WIS. STAT. § 46.10(2) (imposing "the cost of the care, maintenance, services and supplies" on a person committed under WIS. STAT. § 971.14). Should the order finding Ford incompetent be vacated, Ford would no longer be responsible for those costs. *See* *S.A.M.*, 402 Wis. 2d 379, ¶24. Consequently, this court rejects the State's argument and concludes that Ford's case is not moot.

### III.  Ineffective Assistance of Counsel

¶19 Ford argues that trial counsel was ineffective as a result of her participation in the evaluation performed at Mendota. Specifically, Ford takes issue with the following participation of counsel reflected in the evaluation:

> On November 3, 2021, this writer contacted public defender Paige Styler to inquire about her experiences working with Ms. Ford. Attorney Styler indicated Ms. Ford appears to have procedural understanding, but she

7

was concerned that the approach Ms. Ford wanted to take with her case was not always based on sound logic or appropriate legal strategy. Attorney Styler indicated Ms. Ford did not want to embrace all of her legal charges as she believed her "stalker' was to blame. Attorney Styler also noted concern regarding Ms. Ford's mental health and well-being as she had observed some unusual behaviors, including Ms. Ford reading a book in court, interrupting her attorneys, giving them unusual legal advice outside of her area of previous practice, and using legal jargon incorrectly.

The evaluator additionally commented on her conversation with Ford's counsel saying, "This writer's experience along with the discussion with Ms. Ford's attorney raises significant concern regarding her present ability to rationally consult with her attorney." Further, the evaluator noted, "Ms. Ford was not a criminal attorney, yet she has offered legal advice to her attorneys that is not based on sound logic and has been resistant to exploring other options."

¶20 Ford argues that trial counsel breached her duty of client confidentiality when she spoke with the evaluator, particularly in light of the fact that Ford wanted to be found competent to proceed.[4] Thus, Ford argues that trial counsel performed deficiently and, pursuant to *Weaver v. Massachusetts*, 582 U.S. 286 (2017), prejudice is presumed from trial counsel's deficient performance. Alternatively, Ford argues that she can show prejudice because it is clear that the evaluator relied on the information provided by trial counsel in reaching the conclusion that Ford was incompetent to proceed.

---

[4] In fact, when asked at the November 11, 2021 hearing if the defense would be contesting the evaluator's report, trial counsel stated, "Yes, Ms. Ford is indicating she is competent." Trial counsel additionally waived any testimony and requested that the circuit court base its decision entirely on the report.

8

¶21    A defendant must show two elements to establish that his or her counsel's assistance was constitutionally ineffective:  (1) counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense.  *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334.  "An ineffective assistance of counsel claim presents a mixed question of fact and law."  *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95.  "We will not reverse the circuit court's findings of fact unless they are clearly erroneous."  *Id.*  "We independently review, as a matter of law, whether those facts demonstrate ineffective assistance of counsel."  *Id.*

¶22    To resolve the matter, this court turns to *State v. Meeks*, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 869, and concludes that trial counsel's participation in the evaluation and the statements provided violated the attorney-client privilege.  Consequently, this court also concludes that trial counsel's performance was deficient and Ford was prejudiced.

¶23    In *Meeks*, our supreme court concluded that "an attorney's opinions, perceptions, and impressions relating to a former client's mental competency fall within the definition of a confidential communication pursuant to WIS. STAT. § 905.03(2) and SCR 20:1.6" and that "such communications may not be revealed without the consent of the client."[5]  *Id.*, ¶2.  While this court recognizes that *Meeks* addressed the situation of an attorney testifying at a hearing about a former client, the underlying principle remains the same—the attorney's opinions, perceptions, and impressions about a client's mental competency are protected by

---

[5] WISCONSIN STAT. § 905.03 sets forth the attorney-client privilege, and SCR 20:1.6. is a specific rule adopted by the supreme court that outlines situations in which an attorney can reveal information without consent of the client.

the attorney-client privilege, whether the client is former or current. *See id.*, ¶¶7-8, 40. "While the contents of confidential conversations with [Ford] were not revealed …, [trial counsel's] expressed opinions, perceptions, and impressions of [Ford's] competency were premised upon and inextricably linked to confidential communications." *See id.*, ¶58. Consequently, trial counsel's opinions, perceptions, and impressions of Ford's mental competency are protected by the attorney-client privilege.

¶24 Thus, this court concludes that trial counsel's participation in Ford's evaluation was a breach of the attorney-client privilege, and trial counsel's performance was deficient as a result of that breach. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant").

¶25 Further, this court concludes that Ford was prejudiced by trial counsel's performance as evidenced by the evaluator's reliance on the information provided by trial counsel, trial counsel's request to base the competency decision entirely on the report, and Ford's desire to be found competent. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Given the evaluator's reliance on trial counsel's statements and then the circuit court's sole reliance on the evaluator's report, this court concludes that there is a reasonable probability that the outcome of Ford's competency hearing would have been different had trial counsel's statements not been considered in determining Ford's competency.

10

¶26 Having so concluded, this court further concludes, as our supreme court did in *Meeks*, that the appropriate remedy is a nunc pro tunc competency hearing where Ford's competency is evaluated without the benefit of trial counsel's opinions, perceptions, and impressions of Ford's mental competency.[6] *See id.*, 263 Wis. 2d 794, ¶61; *see also* **State v. Smith**, 2016 WI 23, ¶¶44-45, 367 Wis. 2d 483, 878 N.W.2d 135 ("[T]he remedy is not to vacate the judgment of conviction and order a new trial. Rather, the remedy is a remand to determine whether a meaningful retrospective competency hearing can be held."). Thus, this court remands this matter for the circuit court to hold a hearing addressing Ford's competency in which trial counsel's statements to the evaluator are not considered when determining whether Ford was competent to proceed with the criminal charges filed against her.

*By the Court.*—Orders reversed and remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] The State argues that Ford failed to preserve her argument of ineffective assistance of counsel by failing to raise the argument in the circuit court. However, an incompetency finding is a civil matter, and it is subject to its own rules. *See* **State v. Scott**, 2018 WI 74, ¶¶27-34, 382 Wis. 2d 476, 914 N.W.2d 141.